ERVIN, Chief Justice.
We review a final order of the Florida Public Service Commission denying a motion of the City of West Palm Beach, Florida, to dismiss a petition of Transit Company of the Palm Beaches, Inc., a bus company which seeks the Commission’s approval of a rate increase of bus passenger fares.
It appears from the record that Transit Company entered into an agreement on January 1, 1962 with the City of West Palm Beach; the form in which the agreement was entered was by a franchise ordinance (No. 797-62) adopted by the City and accepted by Transit Company.
The ordinance granted a nonexclusive franchise to Transit Company to operate a motor bus system for the transportation of passengers over and across the public streets of the City and into and from urban and suburban communities and territories adjacent the City, which includes the cities and towns of Lake Park, Riviera Beach, Palm Beach, Lake Worth, Haver-hill, and Palm Beach Shores. It reserved in the City the right to regulate the motor bus system.
The ordinance provided, inter alia:
“B. Rates: To charge only such rates as are presently on file with and approved by the Florida Railroad and Public Utilities Commission, a copy of which is attached hereto and made a part hereof, but in no event will the passenger fare rates for passengers whose origin and destination are wholly within the CITY be more than twenty (20) cents, unless such increase is approved by the COMMISSION of the CITY after due notice and public hearing.
“C. Routes and Time Schedules: To operate its buses over such routes and according to such routes and according to such time schedules as are presently on file with and approved by the Florida Railroad and Public Utilities Commission or as may otherwise be agreed upon by the COMPANY and the COMMISSION of the CITY, keeping in mind that any such change of routes or time schedules shall always be in the public interest.” (Appendix, Petitioner’s Brief, p. 13.)
Subsequently, in 1965, the Transit Company took the unilateral position it did not come under the jurisdiction of the City of West Palm Beach, but, rather, under the jurisdiction of the Florida Public Service Commission, and thereafter refused to comply with the terms of the franchise ordinance. Thereupon the City undertook to negotiate with Transit Company regarding the regulation and operation of Transit Company, but no agreement was reached and the matter of jurisdiction was finally submitted by Transit Company to the Florida Public Service Commission. This was done on April 19, 1968, by Transit Company filing a petition with the Commission for a rate increase. It alleged therein that it operated its buses pursuant to a certificate of public convenience and necessity, Certificate No. 712, issued to it by the Commission for transportation of passengers within and between the municipalities hereinbefore mentioned. This certificate was issued to Transit Company after it had accepted the franchise ordinance. The petition set forth certain facts and reasons not material here in support of the rate irt-crease.
The City of West Palm Beach intervened in the rate increase proceedings before the Commission as a protestant and moved to dismiss the petition on the following grounds:
1. The Commission does not have jurisdiction over the operation of Transit Company.
*324 2. That under the exemptions of F.S. Section 323.29, F.S.A., and in view of the regulation of bus transportation within the exempt territory by the franchise ordinance of the City of West Palm Beach, the Commission has no jurisdiction or control over the transportation of passengers within the territory set forth in the petition.
The Commission denied the City’s motion to dismiss. In its order of denial the Commission conceded that technically the transit system came under the City’s jurisdiction, quoting the pertinent portion of F. S. Section 323.29, F.S.A., as follows :
(1) (a) * * * There also shall be exempted from the provisions of this part, and from commission jurisdiction and control, persons operating motor vehicles within the corporate limits of any city or town or the adjoining suburban territory, or between cities and towns whose boundaries adjoin, where such business of carriage is regulated by the legislative body of such cities or towns. * * *” (Emphasis supplied.)
However, the Commission then found and determined administratively the City of West Palm Beach did not in fact regulate the transit system. It said:
“It is quite obvious from the testimony adduced at the hearing that the City of West Palm Beach has abandoned its attempts to regulate the applicant except to the extent of collecting a $166 a month franchise fee. No evidence was produced by the protestant to the effect that any safety inspections were ever made or that there were any requirements that the applicant file with the protestant its yearly financial statement. The protestant introduced no evidence to the effect that it ever required the applicant to furnish certain types of equipment.
“The Commission concludes from the foregoing excerpts from the transcript of record and the evidence or lack of evidence presented at the hearing that it is quite obvious the City of West Palm Beach, the protestant in this matter, either does not regulate or has abandoned adequate and effective regulation of the applicant as contemplated by the Legislature and the Supreme Court in the case of Mercury Cab Owners Ass’n v. Miami Beach Air Transp., 77 So.2d 837, where on Page 838 the Court said:
“ ‘ * * * it is recognized that as a general rule “the entire operation of persons engaged in the business of carriage should be subject to the exclusive regulation of either cities or towns or the Florida Railroad & Public Utilities Commission.” ’
“Therefore, the applicant does not come under the exemptions set out in Section 323.29, Florida Statutes, and the Motion to Dismiss should be denied. * * *”
Thus the issue on review here is whether the City of West Palm Beach or the Florida Public Service Commission has jurisdiction to regulate the subject bus operation.
We feel constrained to hold that the jurisdiction over Transit Company lies with the City.
Respecting the facts, we find many regulatory provisions in the franchise ordinance, viz.: those above quoted, those relating to maintenance and repair of equipment and buses, those providing for city inspection of the equipment to see that it is safe, and those relating to insurance to be carried by the Company.
It is quite apparent that the operation of the system is within an exempt zone pursuant to the provision from Section 323.29 quoted above, and under a city franchise ordinance duly accepted by the Company.
That there is legislative authority for the exercise of such authority by a city instead of by the Commission is recognized in City of Pensacola v. King, et al. (Fla.), 47 So.2d 317. We said:
“* * * the exercise of powers beyond the corporate limits of the city, some *325 times called extra-mural, have frequently been authorized by the legislature in the interest of its general police powers. * * *
“The act under review provides a field of operations for both the City of Pensa-da and the Commission. It vested in the city authority to regulate an intra area service embracing the city and suburban territory as defined and reserved to the Commission power to regulate the intramural service whether to or from the area, including the power to determine the bounds of the adjoining suburban territory. * * * no reason is shown why both should not operate harmoniously.”
The Commission has only the powers that are expressly or impliedly conferred upon it by statute. See Fogarty Bros. Transfer, Inc. v. Boyd (Fla.), 109 So.2d 883; Southern Gulf Utilities, Inc., v. Mason (Fla.), 166 So.2d 138, and Southern Armored Service, Inc. v. Mason (Fla.), 167 So.2d 848.
The alleged failure of the City to regulate, i. e., to enforce the regulatory provisions of the franchise ordinance is no justification for the Commission to assume jurisdiction over the transit system.
“* * * the validity of an ordinance is not affected by failure to enforce it * * * or by the fact that it is repeatedly violated. * * * ” (McQuillin, Municipal Corporations, 3d Ed., Vol. 6, Sec. 20.09.)
Also from the same text and volume, it appears: “Failure to enforce an ordinance does not repeal it.” (Supra, Sec. 21.18.)
There is no showing in the record that the cities and towns, referred to hereinbe-fore, which are served by the transit system in addition to the City of West Palm Beach under the latter’s franchise ordinance, are not within the suburban territory or exempt zone of the City of West Palm Beach as contemplated in F.S. Section 323.01(12) (c), F.S.A.
The foregoing considered, we find no basis in law for the Florida Public Service Commission to oust the jurisdiction of the City of West Palm Beach over Transit Company under the franchise ordinance. Such an ouster by the Commission is not authorized by law. The word “regulate” in F.S. Section 323.29, F.S.A. refers to a state of things in existence, namely, that a legal relationship exists between a motor carrier and a city pursuant to which the city has the authority to regulate the operation of the motor carrier. Whether there has been such regulation of the motor carrier thereunder by the City that is satisfactory to the Florida Public Service Commission is beside the point and immaterial.
Transit Company, dissatisfied with its present rate structure, and if unable to secure rate relief from the City, has recourse to the courts. Since the Florida Public Service Commission believes the existing statutory provisions relating to regulatory jurisdiction over the bus operation are unsatisfactory and fail the public interest, it can bring the subject to the attention of the Legislature in an effort to secure a revision of existing laws.
Finally, we conclude the law should not countenance the nullification of a franchise contract duly and solemnly executed between a city and a motor carrier or that a state administrative agency has the power to declare such contract has been abandoned by the city’s inaction to regulate.
The order of the Commission is quashed with directions that the City’s motion to dismiss the petition of Transit Company be granted.
It is so ordered.
DREW, THORNAL and CALDWELL (Retired), JJ., and HOBSON, District Court Judge, concur.