QUESTION: What effect does the issuance of a certificate of public convenience and necessity by the Public Service Commission have on the power of the City of Cape Coral to regulate the operation of a privately owned busing company within the bounds of the city and adjacent suburban areas?
SUMMARY: Motorbus companies operating in this state are subject to either the regulation of municipalities or the regulation of the Florida Public Service Commission, but not both, s. 323.29(1)(a), F.S.; and the commencement of municipal regulation of such a company subsequent to — as well as prior to — the commission's issuance of a certificate of public convenience and necessity exempts that company from the provisions of Part I of Ch. 323, F.S., and from further commission jurisdiction and control. As a general proposition, municipalities have the power to enact legislation concerning any subject matter upon which the state legislature may act, except, inter alia, "[a]ny subject expressly preempted to state or county government by the constitution or by general law." Section 166.021(1)(c), F.S. See City of Miami Beach v. Forte Towers, Inc., No. 44,936 (Fla. Sup. Ct., October 19, 1974), in which the constitutionality of s. 166.021, F.S., was upheld. Since I am of the opinion that a municipality's regulation of motorbus carriers operating within that municipality is a "municipal purpose," and is a "subject matter upon which the Legislature may act," see, generally, 18 McQuillin Municipal Corporations s. 53.30, pp. 196-197, the determinative question here is whether such municipal regulation is "expressly preempted to state or county government by the constitution or by general law." In this regard, Part I of Ch. 323, F.S., concerns, generally, the regulation of motor carriers by the Florida Public Service Commission. Section 323.03 provides in pertinent part that No motor carrier shall operate any motor vehicle for the transportation of persons or property as a common carrier for compensation on any public highway in this state without first having obtained from the public service commission a certificate that public convenience and necessity requires such operation. See s. 323.01(7) for definition of "motor carrier"; see also s. 323.07 granting broad regulatory powers to the commission; and Ch. 25-5, F.A.C., rules of the commission applying to passenger carriers. However, s. 323.29(1)(a), F.S., establishes several exemptions from the provisions of Part I of Ch. 323, id., and from commission jurisdiction and control. This section provides in pertinent part that . . . There also shall be exempted from the provisions of this part, and from commission jurisdiction and control, persons operating motor vehicles within the corporate limits of any city or town or the adjoining suburban territory, or between cities and towns whose boundaries adjoin, where such business of carriage is regulated by the legislative body of such cities and towns. (Emphasis supplied.) See s. 323.01(12) for definition of "suburban territory." The most recent case construing this statutory language is City of West Palm Beach v. Florida Public Service Commission, 224 So.2d 322 (Fla. 1969). There, the City of West Palm Beach challenged the authority of the commission to grant a rate increase to a motorbus company operating within the city and into suburban territory. The company was operating under a franchise ordinance adopted by the city prior to the commission's issuing to the company a certificate of public convenience and necessity. The commission claimed that, although the company would be exempt from commission jurisdiction and control if regulated by the city, the mere adoption of the franchise ordinance by the city and the acceptance of it by the company did not constitute regulation of the company by the city as contemplated by s. 323.29(1)(a). Thus, the commission argued that it had jurisdiction to grant a rate increase to the company. Rejecting the commission's contention, however, the court in City of West Palm Beach held that the adoption by the city of the franchise ordinance — which provided for bus rates, routes, and time schedules, as well as maintenance and repair of equipment and buses, safety inspections, and insurance to be carried by the company — constituted the requisite city regulation, even if such ordinance was not enforced by the city. The court stated at p. 325 of the decision that the word "regulated" in s. 323.29(1)(a), . . . refers to a state of things in existence, namely, that a legal relationship exists between a motor carrier and a city pursuant to which the city has the authority to regulate the operation of the motor carrier. Whether there has been such regulation of the motor carrier thereunder by the city that is satisfactory to the Florida Public Service Commission is beside the point and immaterial. The court ruled that the commission had no jurisdiction or control over the operation of the motorbus company in question, and, thus, could not grant said company a rate increase. The commission in City of West Palm Beach relied in part on the language of an earlier Florida Supreme Court decision, Mercury Cab Owners Association v. Miami Beach Air Transport, 77 So.2d 837, 838 (Fla. 1955), in which it is stated that . . . it is recognized as a general rule "the entire operation of persons engaged in the business of carriage should be subject to the exclusive regulation of either cities or towns or the Florida Railroad and Public Utilities Commission. (Emphasis supplied.) See also City of Miami Beach v. Carter, 39 So.2d 552, 553 (Fla. 1949). Although finding for the city because the adoption of the franchise ordinance constituted "regulation" within the purview of s. 323.29(1)(a), F.S., the court in City of West Palm Beach did not nullify this principle of "exclusive regulation." In fact, the court appeared to reaffirm the principle's viability when it stated at p. 324 of the decision that . . . the issue on review here is whether the City of West Palm Beach or the Florida Public Service Commission has jurisdiction to regulate the subject bus operation. (Emphasis supplied.) Stating this principle of exclusive regulation differently, the commission is precluded from regulating the operations of a motorbus company which a municipality has jurisdiction to regulate, and a municipality is precluded from regulating the operations of a motorbus company which the commission has jurisdiction to regulate. Cf. City of Miami Beach v. Carter, supra, in which commission jurisdiction was upheld. Thus, within the context of s. 166.021, F.S., the regulation of a motorbus company is not "preempted" to the state if the municipality in which that company operates is regulating that company within the purview of s. 323.29(1)(a), F.S. As to when such municipal regulation must commence in order to establish the jurisdiction of a municipality, s. 323.29(1)(a), F.S., does not distinguish between a situation in which municipal regulation of a motorbus company exists prior to the commission's issuance of a certificate of public convenience and necessity to that company and a situation in which municipal regulation begins subsequent to such issuance. All that is required is that a company operating within the corporate limits of a municipality and into suburban territory be "regulated by" that municipality. (I am advised by a member of the commission's legal staff that such is his interpretation.) Thus, I am of the opinion that, pending judicial clarification to the contrary, the commencement of municipal regulation of a motorbus company subsequent to — as well as prior to — the commission's issuance of a certificate of public convenience and necessity exempts such company from the provisions of Part I of Ch. 323, F.S., and from further commission jurisdiction or control.