BOYD, Justice.
The Florida Department of Transportation has brought a petition for certiorari in this Court to have quashed Order No. 13072 of the Public Service Commission. We have jurisdiction. Article Y, Section 3(b)(3), Florida Constitution. The issue in this case is whether the Public Service Commission may establish, through its power to regulate the safety of operations of motor carriers, a minimum rate schedule for motor carriers of road building and construction aggregates.
The Florida Road Building and Construction Aggregates Hauling and Safety Conference is an organization of motor carriers that haul road building materials (aggregates), such as sand, gravel, limestone, crushed rock, clay and fill dirt. The Conference filed a Petition for Recognition with the Public Service Commission. During the Recognition Proceedings the Conference requested that the Commission establish minimum rates for all motor carriers of road building and construction aggregates to ensure that the carriers’ operations were safe. According to the aggregates carriers, the competition in their industry had become so fierce that, in order to remain in business, carriers were avoiding costs necessary to maintain their hauling vehicles in safe condition, thus endangering public safety. Fearing that the establishment of minimum rates would raise the cost of hauling services by 25%, and in turn the state’s cost in road construction by 16.7%, the Department of Transportation, which oversees the building of Florida roads, intervened in the proceedings to oppose the minimum rates. The Department premised its opposition on Commission lack of authority to set rates for carriers of road building aggregates. The Commission, by a 2-1 vote,[1] did not agree with the Department and, instead, entered two orders in the cause. In Order No. 12562 it found it contrary to public interest in safety for the carriers’ rates to be subject to unlimited competition. After hearings on setting minimum rates, at which the Department appeared, the Commission entered Order No. 13072 establishing a minimum rate schedule.
The Department’s petition for certiorari followed. The Conference has been granted leave to intervene in the proceedings before this Court in support of the Commission.
The Department concedes that the Public Service Commission is vested with regulatory authority over the safety of operations by motor carriers of road building aggregates, as it clearly is. Section 323.07, Flori *361 da Statutes.[2] The Department insists, however, that such authority does not include rate-fixing because carriers of road building aggregates are exempted by subsection (4) of Section 323.08[3] from the Commission’s power, provided by subsections (1) and" (2) of Section 323.08,[4] to fix motor carrier rates. The Commission responds that the Department is confusing the separate issues of safety regulations and rate-fixing. In the view of the Commission this ease concerns safety regulation alone. And, since subsection (4) of Section 323.08 does not expressly exempt the aggregates carriers from the Commission’s power to set minimum rates in the interest of safety, then the Commission, by its action in this case, has not overstepped its bounds set by the Legislature. The Conference bolsters the Commission’s position with its assertion that the Legislature, by its enactment of Section 323.07, intended -to confer broad powers on the Commission when public safety is at stake.
Our analysis begins with the recognition that the Public Service Commission was created and exists through legislative enactment. Being a statutory creature, its powers and duties are only those conferred expressly or impliedly by statute. City of West Palm Beach v. Florida Public Service Commission, 224 So.2d 322 (Fla.1969). Southern Gulf Utilities Inc. v. Mason, 166 So.2d 138 (Fla.1964). And any reasonable doubt as to the existence of a particular power of the Commission must be resolved against it. City of Cape Coral v. GAC Utilities Inc. of Florida, 281 So.2d 493 (Fla.1973).
The intent of .the Legislature cannot be clearly gleaned from the statute. But we think there is at least reasonable doubt that the Legislature intended to confer on the Commission authority to set- minimum rates in the interest of safety for carriers of road building aggregates when the aggregates carriers are specifically exempted from the Commission’s rate-fixing power. The provision for the Commission’s safety regulation over motor carriers is a general one stating simply that the Commission may “regulate . . . the safety of each such motor carrier [operating under authority of Chapter 323, Part I, Florida Statutes].” Section 323.07, Florida Statutes. In contrast, Section 323.08(4) specifically exempts the aggregates carriers from the Commission’s power to make reasonable, through the detailed rate-fixing procedure of Section 323.08, those motor carrier rates found unreasonable by the Commission. This exemption evinces legislative intent that the aggregates carriers’ rates be subject to competition and free of the Commission’s rate-fixing powers. This intent controls our decision in favor of the Department because it creates a reasonable doubt as to whether the Commission has the power the Conference has requested it exercise.
Our decision does not impede the Commission from requiring that the aggregates carriers maintain their hauling vehicles in safe condition. The Commission’s broad power of safety regulation, spoken of by the Conference, clearly exists in Section 323.07, Florida Statutes. It is just that the Commission, in light of the exemption from *362 rate-fixing given to motor carriers of road building and construction aggregates, may not use rate-fixing as a means to achieve that end.
Nor should our decision lead to endangered public safety, since the competitive marketplace, through its unrestricted operation, should force out of business those carriers unable to operate safely at the competitive rate. If such a result is undesirable, then it is up to the Legislature to clearly provide the Commission with the power to fix minimum rates for the aggregates carriers. Until then the Commission may not set rates for the aggregates carriers since it does not have the power to do so.
Order No. 13072[5] is quashed and the cause is remanded to the Public Service Commission.
It is so ordered.
OVERTON, C. J., and SUNDBERG, HATCHETT and KARL, JJ., concur.

. Commissioner Mayo dissented.

. “The commission may . regulate the service and safety of operations of each such motor carrier [operating under the authority of Chapter 323, Part I, Fla.Stat.] . . . .”

. “The provisions of subsections (1) and (2) of this section, and § 323.19, shall not be applicable to carriers of road-building and construction aggregates, and holders of limited common carrier certificates shall not be restricted with any requirements for domiciling equipment. This subsection shall not apply to motor vehicles having a load capacity of 10 tons or less.”

. “(1) Every motor carrier holding a certificate of public convenience and necessity for common carriage shall maintain on file with the commission a schedule of the rates, fares, charges and classifications, if any, and a time schedule, if any, of all motor vehicles operated under such certificate. . . ”
“(2) Whenever such rates or fares or time schedules are found to be unreasonable, the commission, upon its own motion, or upon complaint, shall upon hearing prescribe reasonable rates and time schedules to take the place of those found unreasonable, and such new rates shall be filed in place of the rates and schedules superseded. . .”

. Order No. 12562 was not timely brought before this Court for review and indeed the Department seeks quashal of Order No. 13072 only. The rate-fixing problem of this case, nonetheless, was properly presented by the Department’s petition for certiorari since the Commission cannot issue a minimum rate schedule as done in Order No. 13072, without the authority to do so.