281 So.2d 493 (1973)
The CITY OF CAPE CORAL, Florida, Appellant,
v.
GAC UTILITIES, INC., OF FLORIDA and the Florida Public Service Commission, Appellees.
No. 42060.
Supreme Court of Florida.
June 13, 1973.
Rehearing Denied September 10, 1973.
Clyde G. Killer, Fort Myers, for appellant.
B. Kenneth Gatlin of Madigan, Parker, Gatlin & Swedmark, and R.M.C. Rose, Tallahassee, for appellees.
*494 BOYD, Justice.
This cause is before us on appeal from the Circuit Court, Leon County. The trial court, in its final judgment, passed on the validity of House Bill 2425, Chapter 71-585, Laws of Florida, an Act relating to the city of Cape Coral, Lee County, giving this Court jurisdiction of the direct appeal under § 3 of Article V of the Florida Constitution, F.S.A. The pertinent sections of the Act are as follows:
"An Act relating to the City of Cape Coral, Lee County; divesting the Florida Public Service Commission of its exclusive jurisdiction under Chapter 367, Laws of Florida, 1968; providing for the authority, procedures and powers for the fixing and changing of rates to be charged and collected by a public utility under its jurisdiction of the Water and Sewer System Regulatory Law; providing for the vesting of said authority, procedures and powers for determining, fixing and changing of rates to be charged and collected by a public utility for its water and sewer services within the municipal jurisdiction of the City of Cape Coral, in and with the City of Cape Coral;"
"Whereas, the provisions of Chapter 367, Laws of Florida, 1968, became effective upon the adoption by the board of county commissioners of Lee County of a resolution declaring such county is subject to the provisions of this law and the submission of such resolution to the Florida Public Service Commission; and
"Whereas, it appears that at the time of the adoption and submission of said resolution, the City of Cape Coral was an unincorporated area and within the jurisdiction of the board of county commissioners of Lee County; and
"Whereas, the City of Cape Coral is now an incorporated municipality and a lawful governmental agency under the definitions of Chapter 367, Laws of Florida, 1968, and for promoting its best interests, it is desirable that provision be made for the release of said exclusive jurisdiction of the Florida Public Service Commission to the said City of Cape Coral, now, therefore,

"Be It Enacted by the Legislature of the State of Florida:
"Section 1. That the authority, procedures and powers to determine, fix and change rates to be charged and collected by a public utility for its water and sewer services within the municipal jurisdiction of the City of Cape Coral, is hereby vested in and with the City of Cape Coral."
The foregoing special law was held unconstitutional, as applied to appellee GAC Utilities, Inc., of Florida, by the trial court on the grounds that it violates Article III, § 11(a)(20) of the Florida Constitution.[1] The trial court stated:
"Said section provides that there shall be no special law or general law of local application pertaining to regulation of occupations which are regulated by a state agency. At the time the special act purportedly became law, the occupation of plaintiff of furnishing water and sewer service to customers in Lee County was regulated under general law by a stage agency, The Florida Public Service Commission."
On appeal to this Court, the appellant argues that "as of the enactment of House Bill 2425, the utility was no longer regulated by the Public Service Commission, and, therefore, there is no question involving the application of Article III, Section 11(a)(20)." The appellant contends that the jurisdiction of the Public Service Commission can be altered by the Legislature, as it has seen fit to do in the instant case.
*495 Appellee GAC Utilities, Inc., of Florida, raises additional grounds for the unconstitutionality of the Act: 1) defective title; 2) arbitrary and unreasonable classification setting the appellee apart from other similar utilities in the State; 3) no intelligible standards or guidelines for regulating the rates.
Appellee Public Service Commission raises an additional point to be considered by this Court should it find the statute constitutional, to-wit: "The unqualified word `rates' used in Section 1, Chapter 71-585, should be construed to include charges for service availability as well as charges for day-to-day water and sewer utility service."
We hereby reverse the holding of the trial court that House Bill 2425, Chapter 71-585, Laws of Florida, is unconstitutional and invalid as applied to appellee GAC Utilities, Inc., of Florida. The pertinent facts, as found by the trial court, are as follows:
"GAC Utilities, Inc., of Florida, is a water and sewer utility operating within the municipal boundaries of the City of Cape Coral in Lee County, Florida. On February 18, 1970, the Board of County Commissioners of Lee County passed a resolution pursuant to Section 367.23, Florida Statutes, 1969, F.S.A., a general law, placing water and sewer utilities in Lee County under the regulatory jurisdiction of the Florida Public Service Commission, a state agency. Since that date, water and sewer utilities operating in Lee County have been under the exclusive regulatory jurisdiction of the Commission, unless Chapter 71-585, has changed that jurisdiction. If valid, it would take away that jurisdiction to regulate the rates of water and sewer services of plaintiff within the municipality. Pursuant to the foregoing resolution of the Board of County Commissioners of Lee County, the Florida Public Service Commission by its Order No. 4836 of March 2, 1970, assumed regulatory jurisdiction over the rates and services of the water and sewer utilities operating in the unincorporated areas of said county. The Commission thereafter issued certificates of public convenience and necessity to GAC Utilities, Inc., of Florida, on June 4, 1970, and assumed regulatory jurisdiction over that utility under the foregoing general law. Thereafter, the 1971 Legislature enacted a general law, Chapter 71-278, which was a general revision of Chapter 367, Florida Statutes, F.S.A., the previously existing water and sewer regulatory law. This revision became law on June 25, 1971. Five days later on June 30, 1971, the foregoing special law, Section 71-585, purportedly became law."
Additional pertinent facts may be found in the preamble to House Bill 2425, as set out above.
We agree with appellant's contention that, as of the enactment of House Bill 2425, the utility was no longer regulated by the Public Service Commission, and, therefore, there is no question involved as to the application of Article III, § 11(a)(20), and no question of state preemption or regulation of GAC Utilities, Inc., of Florida.
The preamble of the Bill complained of should be read against the language in Section I of House Bill 2425 vesting all authority for regulation of rates and services or the establishment of rates and service fees in the City of Cape Coral. The intention of the Legislature is abundantly clear. The object of the Act was not to create concurrent jurisdiction over the utility between the Public Service Commission and the City of Cape Coral, but was to establish exclusive jurisdiction over the operation of the utility insofar as rates and service availability are concerned in the City of Cape Coral.
All administrative bodies created by the Legislature are not constitutional bodies, but, rather, simply mere creatures of statute. This, of course, includes the *496 Public Service Commission. In Re Advisory Opinion to the Governor.[2] As such, the Commission's powers, duties and authority are those and only those that are conferred expressly or impliedly by statute of the State. State ex rel. Burr v. Jacksonville Terminal Co.[3] Any reasonable doubt as to the lawful existence of a particular power that is being exercised by the Commission must be resolved against the exercise thereof, Southern Armored Car Service, Inc. v. Mason,[4] and the further exercise of the power should be arrested, State ex rel. Burr v. Jacksonville Terminal Company.[5] The Legislature of Florida has never conferred upon the Public Service Commission any general authority to regulate public utilities. Throughout our history, each time a public service of this state has been made subject to the regulatory power of the Commission, the Legislature has first enacted a comprehensive plan of regulation and control and then conferred upon the Commission the authority to administer such plan. Radio Telephone Communications, Inc. v. Southeastern Telephone Company.[6]
To say that the jurisdiction of the Public Service Commission cannot be altered by the State Legislature is to admit that the government is beyond the control of the people  that an administrative Frankenstein, once created, is beyond the control of its Legislative creator.[7]
To say that the Legislature cannot amend or alter the jurisdiction of the Public Service Commission by a special act for a special purpose is a conclusion which strains not only logic, but rational interpretation of the Constitution as well.[8]
At the same instant the House Bill 2425 became law, the Public Service Commission ceased to regulate GAC Utilities, Inc., of Florida, and the authority to do so passed to the City of Cape Coral.
Since we are speaking of the power to regulate and control the water and sewer utilities within the City of Cape Coral, it seems reasonable to suppose that the Legislature knew and desired that the exclusive jurisdiction of the Public Service Commission would be superseded completely by the jurisdiction of the City when it enacted House Bill 2425, and a proper and reasonable interpretation of the provisions of House Bill 2425 would be to transfer all the jurisdiction established in the Public *497 Service Commission to the City of Cape Coral so that a full and complete job regulating all aspects of the utility could be accomplished.
For these foregoing reasons then, we find that House Bill 2425 does not conflict with Article III, § 11(a)(20) of the Florida Constitution.
As to the point raised by appellee Public Service Commission concerning the definition of the word "rates", in view of the fact that we today uphold a law removing the jurisdiction of the Commission in this case, it would be inappropriate for the Court to pass on this point at this time.
Accordingly, the judgment of the trial court is reversed and remanded for further proceedings consistent herewith.
CARLTON, C.J. and ERVIN and McCAIN, JJ., concur.
DEKLE, J., dissents with opinion and concurs with MASON, Circuit Judge.
MASON, Circuit Judge, dissents with opinion.
ROBERTS, J., dissents and concurs with DEKLE, J.
MASON, Circuit Judge (dissenting).
I must respectfully dissent from the majority opinion. It is my view that the able trial judge was correct in his opinion and judgment that this special act lies squarely within the proscription of Article III, Section 11(a)(20) which declares "That there shall be no special law or general law of local application pertaining to: ... (20) regulation of occupations which are regulated by a state agency ...". It is conceded that the legislative act which purported to take away the authority of the Florida Public Service Commission to regulate a privately owned public utility of the character of that of appellee, GAC Utilities, Inc. of Florida, is a special act. F.S., Chapter 367, F.S.A. which was enacted as Chapter 71-278, Laws of Florida, Acts of 1971, as successor to Chapter 367, F.S. 1969, F.S.A., provides that "The Florida Public Service Commission shall have exclusive jurisdiction over each utility (of the character of that operated by said appellee) with respect to its authority, service, rates, and issuance and sale of its securities maturing more than twelve months after date of issue, except as provided in this chapter." (Parenthesis and emphasis mine.) Prior to the enactment of the special act in question the regulation of water and sewer utilities in Lee County was within the regulatory jurisdiction of the Florida Public Service Commission, having been vested in such Commission under a resolution of the Board of County Commissioners of said county pursuant to the authority granted by Section 367.23, F.S. 1969, F.S.A. At the time the special act became law the regulation of this appellee's utility was thus within the exclusive jurisdiction of the state agency. This point the majority opinion concedes. The special act, if valid, would establish such exclusive jurisdiction in appellant, The City of Cape Coral, Florida. The majority opinion reasons that because the Florida Public Service Commission is a creature of the Legislature that such Legislature has the power to fix and alter its jurisdiction from time to time, and that it follows from such premise that the Legislature may do so by special act. With the premise I agree, but it does not follow therefrom that the Legislature may fly in the face of the Constitution's proscription and fix or alter such jurisdiction by special act.
The majority opinion attempts to fortify the conclusion therein reached on the ground of expediency, that is to say, on the ground that by transferring exclusive jurisdiction from the state agency to the municipality "a full and complete job regulating all aspects of the utility could be accomplished", to quote such opinion. There exist two fallacies in this reasoning. In *498 the first place expediency is no substitute for lack of power to enact a certain type of special law, particularly where the lack of power results from an express prohibition in the State Constitution such as is found in Article III, Section 11(a)(20) thereof. Secondly, the power to regulate water and sewer systems incorporated in Chapter 367 is broader than the power attempted to be given the appellant City under the special act. In the general law the Florida Public Service Commission is vested with power not only to fix and change rates to be charged by the utility, as such power is limited in the special act to the municipality, but is given power to regulate the service rendered by the utility, as well as power to prescribe a uniform system and classification of accounting, to require repairs, improvements, additions and extensions to the plant and equipment of the utility, and to require periodic reports to be filed with the Commission by the utility.
Also, if expediency is to be the test, it seems to me that it is much more expedient that there by uniformity of rate regulation such as can only be had by an agency with state-wide jurisdiction, rather than a proliferation of such regulations by as many governmental entities as there are such within the geographical boundaries of the state.
The majority opinion, in a footnote (No. 8) says that the special law is valid and not in violation of the Constitution's proscription on the theory that the special law does not attempt to regulate the state agency-regulated industry, but deals rather with the state agency itself, removing therefrom a portion of its legislatively created jurisdiction. This seems to me to fly straight in the face of the express terms of the special law which, if valid, would vest within the exclusive jurisdiction of the municipality the power "to fix and change rates to be charged and collected" by the water and sewer utility operating within its boundaries. The fixing of a utility's rates to be charged its customers is just as much a regulation of that utility as is the requirement that it render a certain character of service to such customers. An abuse of either power could put the company out of business. And if that is not regulation, then this writer does not understand the meaning of the term. I would affirm.
DEKLE, J., concurs.
DEKLE, Justice (dissenting):
This Court is constantly faced with the overriding duty of applying the most recent changes in either the case law or statutes to current pending causes. The majority relies upon our former holdings; most notably it reiterates the language from our earlier case of Radio Tel. Communications, Inc. v. Southeastern Tel. Co., 170 So.2d 577 (Fla. 1964), which proceeded to its conclusion by a step-by-step consideration of the "single shot" authorizations from time to time to the PSC, up until that date, and stated that the Legislature "has never conferred upon the PSC any general authority to regulate public utilities." This was correct in 1964 but in 1969 (with amendment in 1971) came a complete overhaul of the Legislature's position regarding a uniform regulation of public utilities by its Public Service Commission. Fla. Stat. Ch. 367 (1969) F.S.A.; Fla. Stat. Ch. 71-278 (1971). That statute provides initially:
"367.011 Jurisdiction; Legislative intent.-
"(1) This law shall be known and may be cited as the `Water and Sewer System Regulatory Law.'
"(2) The Florida public service commission shall have exclusive jurisdiction over each water/sewer utility with respect to its authority, service, rates, and issuance and sale of its securities maturing more than twelve months after date of issue, except as provided in this chapter.
"(3) The regulation of water/sewer utilities is declared to be in the public interest, *499 and this law is an exercise of the police power of the state for the protection of the public health, safety and welfare. The provisions of this chapter shall be liberally construed for the accomplishment of this purpose.
"(4) This chapter shall supersede all other laws on the same subject; subsequent inconsistent laws shall supersede this chapter only to the extent that they do so by express reference. This law shall not impair or take away vested rights, other than procedural rights or benefits." (Emphasis added)
It seems clear that this was a well-advised, uniform approach to utility regulation over the state and we can no longer stand on the earlier premise of the majority, based upon Radio Tel. Communications, Inc. v. Southeastern Tel. Co., supra, and related cases.
By appropriate resolution as contemplated in Ch. 367, the Lee County Commission duly adopted Public Service Commission regulation, and now for the City of Cape Coral (within Lee County) to obtain a Special law from the Legislature to remove it from the general regulation of Ch. 367 would destroy the legislative intent of uniformity vested in the Public Service Commission and would present the unusual spectacle of various local delegations chipping away by special statute of local application, at the basic intent and purpose of the Legislature which would soon destroy the general, valid uniformity provided by Ch. 367. We expressly have held to the contrary in Orange City Water Co. v. Town of Orange City, 188 So.2d 306 (Fla. 1966), that when the county commission has (as has Lee County) approved the general PSC utility regulation, that that same county commission cannot go back and "withdraw" its approval; that such action terminates the county's role (and here that of the City whose GAC Utility derives its franchise from Lee County) because to allow otherwise would present the peculiar phenomenon of having a county (city) (by its subsequent change withdrawing from Ch. 367) overruling in effect the Legislature! The majority recognizes this in its note 7 and yet misses the point of the uniformity which Ch. 367 provided and which holding in Orange City Water Co. is the antithesis of the majority view. We cannot go both ways.
I would affirm the astute holding of the Leon County Circuit Court which found the City of Cape Coral, Lee County, special law to be unconstitutional in its violation of Fla. Const. art. III, § 11(a)(20), which is the constitutional prohibition against special laws pertaining to the regulation of occupations regulated by a state agency.
The suggestion that the term "occupations" does not include utilities is a rather strained view. We have long since departed from the notion of occupations as being that frontier view of "doctor, lawyer, merchant, chief". The constitutional intent obviously meant businesses of all kinds in this modern day and, of course, a public utility is one.
For these reasons I respectfully dissent.
ROBERTS, J., concurs.
NOTES
[1] "Section 11. Prohibited Special Laws.

(a) There shall be no special law or general law of local application pertaining to:
(20) regulation of occupations which are regulated by a state agency;"
[2] 223 So.2d 35 (Fla. 1969).
[3] 71 Fla. 295, 71 So. 474 (1916). To the same holding: City of West Palm Beach v. Florida Public Service Commission, 224 So.2d 322 (Fla. 1969); Southern Gulf Utilities, Inc. v. Mason, 166 So.2d 138 (Fla. 1964); Fogarty Bros. Transfer, Inc. v. Boyd, 109 So.2d 883 (Fla. 1959); Florida Tel. Corp. v. Carter, 70 So.2d 508 (Fla. 1954); Florida Motor Lines Corporation v. Douglass, 150 Fla. 1, 7 So.2d 843 (1941); Florida Motor Lines, Inc. v. Railroad Commission etc., 101 Fla. 1018, 132 So. 851 (1931); State ex rel. Wells v. Western Union Telegraph Co., 96 Fla. 392, 118 So. 478 (1928); State ex rel. Burr v. Jacksonville Terminal Co., 90 Fla. 721, 106 So. 576 (1925); State ex rel. Railroad Commissioners v. Atlantic Coast Line R. Co., 60 Fla. 465, 54 So. 394 (1911).
[4] 167 So.2d 848 (Fla. 1964).
[5] 71 Fla. 295, 71 So. 474 (1916).
[6] 170 So.2d 577 (Fla. 1964).
[7] This would most certainly be the effect of such a holding since, in Orange City Water Company v. Town of Orange City, 188 So.2d 306 (Fla. 1966), we held that the power of a county to adopt a resolution whereby it elected to place itself within the jurisdiction of the Public Service Commission, pursuant to Chapter 367, Florida Statutes, F.S.A., did not imply the power to repeal such adoption, and that the county's attempted repeal would not oust the jurisdiction of the Public Service Commission.
[8] The Constitution provides that there can be no law "pertaining to ... regulation of occupations which are regulated by a state agency." House Bill 2425 is clearly not such a law. It in no way "regulates" a state agency-regulated industry. It deals, rather, not with the industry, but with the state agency itself, and removes from that agency a portion of its legislatively-created jurisdiction. Simply stated, the Legislature giveth, and the Legislature taketh away.