DAVIS, Judge.
Appellants Hernando County, Collier County, Sarasota County, Polk County, and the Board of County Commissioners of Hills- *50 borough County, Florida, appeal a final order of the Public Service Commission (PSC), rendered July 21, 1995, determining that the PSC has jurisdiction over existing facilities and land of Southern States Utilities, Inc. (SSU) in Florida. The PSC decided that SSU’s facilities constitute a “functionally related” statewide “system” whose “service” “transverses county boundaries,” and that the PSC therefore had exclusive jurisdiction to regulate all of the facilities involved in this proceeding under the authority of section 367.171(7), Florida Statutes (1995). Because we conclude that the PSC misinterpreted the plain and unambiguous meaning of the terms “service” and “transverses” as used in the statute, and erred in concluding that the evidence presented was sufficient to establish that SSU’s facilities form a “system,” we reverse.
Under Chapter 367, the various counties of Florida retain jurisdiction to regulate water and wastewater utilities providing service to customers within the boundaries of each county. Such counties are called “non-jurisdictional counties,” because the PSC does not have jurisdiction to regulate the utilities within their boundaries. A county, however, may elect to divest itself of jurisdiction and confer jurisdiction on the PSC. Such counties are called “jurisdictional counties,” because the PSC has jurisdiction to regulate utilities in those counties. Under section 367.171(7), the PSC may exercise exclusive jurisdiction over utility facilities located in non-jurisdictional counties if the PSC makes a finding that such facilities are part of a system providing service which transverses county boundaries.[1] A system is defined by section 367.021(11) as “facilities and land used or useful in providing service and, upon a finding by the commission, may include a combination of functionally related facilities and land.”
Southern States Utilities owns water and wastewater facilities in numerous counties throughout Florida. The order under review finds that the PSC has jurisdiction over all “existing” SSU facilities, but expressly de-dines to assert jurisdiction over future-acquired facilities. The PSC rejected the argument of the counties that it was necessary to demonstrate operational relationships between the facilities encompassed by the ruling in order to find that the facilities were functionally related and formed a system providing service which transverses county boundaries. Instead, the PSC relied primarily upon centralized organization out of the utility’s Apopka office, as well as regional management, to provide the basis for its decision that these various facilities constitute a single system providing service which transverses county boundaries.
In particular, the PSC found that SSU’s existing facilities in Florida are “functionally related” so as to form a system, based upon facts such as company wide financing, centralized purchasing, statewide telephone service through a single carrier, customer service provided with a toll free phone number, a centralized computer center for SSU’s plants in the state, and transportation services through company-wide purchases of vehicles, corporate transportation policies, a nationwide refueling program, and a regional management system. The final order recites that personnel based in Apopka provide technical training to field employees, and also that SSU has plans for a central laboratory to perform tests on certain types of samples taken from all SSU service areas in every region. Equipment and personnel have been shifted between facilities as needed, with large items of equipment centrally stored.
In reaching the conclusion that SSU’s facilities form a system whose service transverses county boundaries, the’PSC ruled that “service” encompasses everything necessary to provide water to and collect and treat wastewater from SSU’s customers, including the administrative and operational functions which make it possible for the utility to provide the water and wastewater service, such as billing, meter reading, and environmental permitting. Rather than apply a distinct meaning to the word “service,” the PSC’s *51 order concludes that the “service” which must transverse county boundaries encompasses all of the same operational and administrative functions which were found to make SSU’s facilities a “system.” In a well-reasoned dissent, Chairman Deason explained that the PSC erred in reaching this expansive definition of “service.” Chairman Dea-son logically concluded that service means the physical delivery of water and/or waste-water. See also Citrus County v. Southern States Utilities, 656 So.2d 1307, 1310 (Fla. 1st DCA), review denied mem., 663 So.2d 631 (Fla.l995)(to satisfy the prerequisites of section 367.171(7), the PSC must find that “the systems were operationally integrated, or functionally related, in ... utility service delivery [rather] than fiscal management”) (emphasis added). “[Tjhere are 44 references to the wox-d ‘service’ in Chapter 367 with the connotation of a physical delivery of water and/or wastewater ...” PSC Order no. PSC-95 — 0894-FOF-WS, at 29 (Chairman Deason, dissenting). The Legislature is presumed to mean the same thing when it uses the same word throughout related statutory provisions. See Goldstein v. Acme Concrete Corp., 103 So.2d 202, 204 (Fla.1958).
If the legislature had intended the administrative and operational functions of a company to satisfy the cross-county activity necessary to support PSC jurisdiction under section 367.171(7), it could have simply used the word “system” instead of also referring to “service.” In other words, the legislature could have provided that the commission shall have exclusive jurisdiction over all utility systems which transverse county boundaries, or, even more expansively, which operate in multiple counties. We must presume that these limiting terms were deliberately included to restrict the exercise of PSC jurisdiction over utilities in nonjurisdictional counties. “Any reasonable doubt as to the lawful existence of a particular power that is being exercised by the Commission must be resolved against the exercise thereof, and the further exercise of the power should be arrested.” City of Cape Coral v. GAC Utilities, Inc., 281 So.2d 493, 496 (Fla.1973).
Nor do the previous decisions of this court supply a valid basis for the PSC’s expansive definition of the word “service.” Board of County Commissioners of St. Johns County v. Beard, 601 So.2d 590 (Fla. 1st DCA 1992) is both factually and legally distinguishable. First, that case involved the question whether facilities operating in Duval, Nassau and St. Johns Counties formed a system. All of the system-wide functions emanated from Duval County. Factually the case is distinguishable because Duval County is contiguous to both Nassau County and St. Johns County. Moreover, the case is distinguishable based upon the limited legal issue which was addressed. The Beard decision is concerned with the meaning of the word “system” rather than focusing on the meaning of “service.” The court recited that the evidence which had been offered to demonstrate that the 'facilities in Beard were part of a single system included identity of management, officers, engineers, accountants, maintenance personnel, customer service representatives and testing laboratories, as well as “system-wide” purchasing, planning, and staffing. The opinion does not state which of those factors were ultimately determinative of the conclusion that the facilities formed a single system. Moreover, while the court held in Beard that the requisite showing under section 367.171(7) that two or more facilities formed a system whose service transverses county boundaries could be established without the existence of a physical interconnection between the various facilities, id. at 593, that holding does not reach the question and is not controlling with regard to the issue of the meaning of “service” as used in section 367.171(7).
Subsequently, in Citrus County v. Southern States Utilities, 656 So.2d at 1310, this court explained that the Beard decision was based upon the fact that the facilities in that case were operationally integrated to the extent that they formed a single system. In contrast, based upon evidence which established that SSU’s systems differed greatly in levels of contributions-in-aid-of-eonstruction (CIAC), size, age, number of customers served, consumption levels, and more, this court rejected an argument that 127 of SSU’s facilities were operationally integrated in “utility service delivery” and concluded that the evidence in Citrus County established *52 only a fiscal relationship resulting from the common ownership of the systems. Id.
We conclude, based upon the terms of the statute and the explanations in those two cases, that the relevant inquiry when determining the existence of jurisdiction under section 367.171(7) is the actual inter-relationship of two or more facilities providing utility services in a particular geographic area comparable to the “service area” defined in section 367.021(10), over which the PSC ordinarily has jurisdiction. The conclusion that the correct focus is on the relationship between particular identified facilities rather than the general corporate structure of the utility is supported by the use of the word “transverses” in the statute, which indicates a legislative intent that the facilities and land forming a system must exist in close geographical proximity across a county boundary. Jurisdiction under section 367.171(7) cannot be founded upon evidence that the company utilizes an umbrella organizational structure, or the central hub of management offices described by SSU in this case.
The PSC erred in finding that SSU’s existing facilities form a system, as that term was defined in Beard and refined in Citrus County, without making any findings that specific facilities are operationally integrated with one another in utility service delivery. Indeed, this order does not even contain any finding of how many facilities SSU currently owns forming the purported “system.” Many of the examples of central organization, such as computer links, regionally organized training sessions, as well as centralized purchasing, planning, human resources, accounting, budgeting, legal services, employee relations, customer relations, billing, information services, financing, and tax administration, are examples of a fiscal relationship rather than operational or functional relatedness. See Citrus County v. Southern States Utilities, 656 So.2d at 1310. Additionally, we conclude that such aspects of a fiscal relationship do not form the basis for the exercise of jurisdiction under section 367.171(7), because they are not the “service” which is addressed in section 367.171(7). The limited examples of specific instances of facilities operating in tandem are plainly inadequate to support a finding that all of the facilities involved in this proceeding are functionally related in utility service delivery.
In the alternative we conclude that this order must be reversed on the independent ground that the PSC has misinterpreted and misapplied the portion of the statute requiring a showing that the services provided by the facilities “transversed county boundaries.”- It is the duty of the courts to implement the legislative intent of a statute. State v. Iacovone, 660 So.2d 1371, 1373 (Fla.1995). Legislative intent is primarily discerned from the language of the statute. Miele v. Prudential-Bache Securities, Inc., 656 So.2d 470, 471 (Fla.1995). “The cardinal rule of statutory construction is that the courts will give a statute its plain and ordinary meaning.” Weber v. Dobbins, 616 So.2d 956, 958 (Fla.1993). The plain ordinary meaning of words may be ascertained by reference to a dictionary. Green v. State, 604 So.2d 471, 473 (Fla.1992). The word “transverse” means: “situated or lying across.” The American Heritage College Dictionary 1438 (3d ed.1993). We conclude that the requirements of this statute can only be satisfied by evidence that the facilities forming the asserted “system” exist in contiguous counties across which the service travels. See Board of County Commissioners of St. Johns County v. Beard, 601 So.2d at 593.
Accordingly, we REVERSE the order determining that the PSC has exclusive jurisdiction over SSU’s existing facilities and land in the State of Florida pursuant to section 367.171(7), Florida Statutes (1995).
ERVIN and KAHN, JJ., concur.

. ''Notwithstanding anything in this section to the contrary, the commission shall have exclusive jurisdiction over all utility systems whose service transversos county boundaries, whether the counties involved are jurisdictional or nonjuris-dictional, except for utility systems that are subject to, and remain subject to, interlocal utility agreements ...” § 367.171(7), Fla. Stat. (1995).