Mr. James P. Beadle Attorney for the Melbourne-Tillman Water Control District 5205 Babcock Street Northeast Palm Bay, Florida 32905
Dear Mr. Beadle:
On behalf of the Board of Directors of the Melbourne-Tillman Water Control District, you have asked for my opinion on the following question:
Is the Melbourne-Tillman Water Control District authorized to lease, sell or otherwise convey or dispose of its real property?
In sum:
The board of supervisors of the Melbourne-Tillman Water Control District may sell, convey or transfer pumping stations, machinery, motive equipment, electric lines and appurtenant equipment of the district, but may not convey other real property of the district.
The existing special laws relating to the Melbourne-Tillman Water Control District have been recodified and reenacted in Chapter 2001-336, Laws of Florida.[1] By enacting Chapter 2001-336, the Legislature intended to "provide a single, comprehensive special act charter for the district" as directed by section 189.429, Florida Statutes.[2]
The charter of the Melbourne-Tillman Water Control District seeks to provide for a "responsive, efficient, and effective local government entity to secure, operate, and maintain an adequate, dependable surface water management system[.]" To that purpose the Legislature expressed its intent that the district "possess the full power and authority to implement, finance, and operate all existing surface water management system facilities, and those to be constructed within the boundaries of the District[.]"[3]
According to its charter, the Melbourne-Tillman Water Control District is charged by the Legislature to:
"(1) Establish a water management system which will accomplish objectives as follows:
(a) Prevent damage from flood, soil erosion, and excessive drainage.
(b) Promote the conservation, development, and proper utilization of surface and ground water.
(c) Preserve natural resources, fish, and wildlife.
(d) Maintain water quality in the District and the receiving waters from the District.
(e) Preserve and protect the natural systems in the District, Turkey Creek, the Indian River, and the St. Johns River.
(f) Purchase and establish conservation areas and passive recreation areas to protect the natural resources, including the sloughs, wetlands, and natural areas, which exist in the District or along the receiving waters, where the District finds it is appropriate for environmental protection or conservation of the natural resources. The District shall utilize the best management practices in implementing and operating its water management system."
As a statutorily created entity, the Melbourne-Tillman Water Control District may only exercise such powers as have been expressly granted by statute or must necessarily be exercised in order to carry out an express power, and any reasonable doubt as to the lawful existence of a particular power sought to be exercised must be resolved against the exercise thereof.[4]
The authority of a special district to convey real property purchased by the district with public funds would appear to be a substantive power for which specific statutory authorization must exist. In Attorney General's Opinion 86-90, this office considered whether the governing board of the Loxahatchee River Environmental Control District was authorized to grant a long-term lease for surplus real property to a nonprofit private organization. While concluding that the district had no authority to grant such a lease to a nonprofit private organization, the opinion noted that the district had a broad grant of legislative authority to convey surplus real property to other governmental agencies. The special act controlling the district provided:
The board shall have the power to transfer, sell, or assign any of the property of the district which it finds is not needed to carry out the purposes of this act to any other governmental agency at whatever terms it deems reasonable.[5]
The Melbourne-Tillman Water Control District does not possess such broad general authority. The charter of the Melbourne-Tillman Water Control District specifically provides, in part, that the district has the power to:
"(3) Build and construct any other works and improvements deemed necessary to preserve and maintain the works within said District boundaries; acquire, construct, operate, maintain, use, sell, convey,transfer, or otherwise provide for pumping stations, including pumpingmachinery, motive equipment, electric lines, and all appurtenant orauxiliary machines, devices, or equipment;. . .
(4) Contract for the purchase, construction, operation, maintenance,use, sale, conveyance, and transfer of the said pumping stations,machinery, motive equipment, electric lines, and appurtenant equipment,
including the purchase of electric power and energy for the operation of the same."[6] (e.s.)
These provisions, which reflect identical language contained in section298.22 (3) and (4), Florida Statutes, clearly authorize the district to sell certain property of the district: pumping stations, machinery, motive equipment, electric lines and associated equipment. To the extent that the district has been authorized to transfer, sell or otherwise convey this property, such authorization acts as a prohibition against the district's governing board conveying any other property of the district.[7]
Therefore, it is my opinion that the board of supervisors of the Melbourne-Tillman Water Control District may sell, convey or transfer pumping stations, machinery, motive equipment, electric lines and appurtenant equipment of the district, but may not convey other real property of the district.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] Chapter 2001-336, Laws of Florida, repealed Chs. 86-418, 90-401, 91-341, 92-239, and 94-424, Laws of Florida, and recreated the district and reenacted the district charter. See, title to Ch. 2001-336, Laws of Florida.
[2] See, s. 1, Ch. 2001-336, Laws of Florida.
[3] Section 3, Ch. 2001-336, Laws of Florida.
[4] See, State ex rel. Greenberg v. Florida State Board of Dentistry,297 So.2d 628 (Fla. 1st DCA 1974), cert. dismissed, 300 So.2d 900 (Fla. 1974); City of Cape Coral v. GAC Utilities, Inc., of Florida, 281 So.2d 493
(Fla. 1973).
[5] Section 13, Ch. 71-822, Laws of Florida, as amended. And see, e.g., Ops. Att'y Gen. Fla. 86-75 (1986), dealing with the Municipal Service District of Ponte Vedra Beach and noting that the district had been granted the authority to "purchase, hold, lease, sell or otherwise acquire and convey real and personal property"; and 87-38 (1987), discussing the nature of the Florosa Fire Control District and noting that the Legislature had granted the district the power to "lease, own, possess and convey real and personal property[.]"
[6] Section 3, Ch. 2001-336, Laws of Florida.
[7] See, Alsop v. Pierce, 19 So.2d 799 (Fla. 1944) (express statutory direction as to the manner of doing a thing is implied prohibition of its being done in any contrary manner); and Op. Att'y Gen. Fla. 86-90 (1986).