Dear Ms. Evans:
On behalf of the Housing Finance Authority of Palm Beach County, Florida, you ask the following questions:
1. May a housing finance authority formed pursuant to Part IV, Chapter159, Florida Statutes, loan its surplus funds to for-profit developers for the development of affordable housing under section 159.608(10)(b), Florida Statutes?
2. May a housing finance authority loan surplus funds to for-profit developers for the construction, purchase, reconstruction, or rehabilitation of qualifying housing under section 159.608(3), Florida Statutes?
In sum:
The Housing Finance Authority of Palm Beach County may loan funds to for-profit developers for the development of qualifying housing or the construction, purchase, reconstruction, or rehabilitation of qualifying housing under the provisions of Part IV, Chapter 159, Florida Statutes, if such housing fulfills the purposes of the act.
The Housing Finance Authority of Palm Beach County, Florida, (authority) was created pursuant to Part IV, Chapter 159, Florida Statutes, and Palm Beach County Ordinance 79-3.[1] The Authority receives revenue from fees charged in connection with single family mortgages and multi-family revenue bond issues. It has earned investment income on these amounts which exceeds the operational and administrative costs for the authority. Various for-profit developers have requested loans from the authority using its surplus funds as a source to finance the construction, purchase, reconstruction, or rehabilitation of qualifying housing developments, as well as for the development of affordable housing projects, but there is concern that the authority's enabling legislation may preclude such an arrangement.
Part IV, Chapter 159, Florida Statutes, is known as the "Florida Housing Finance Authority Law."[2] In creating the housing financing law, the Legislature determined that the shortage of housing and capital for investment in housing in this state was a threat to the "health, safety, morals, and welfare" of the residents of this state and could not be relieved except through the encouragement of investment by private enterprise.[3] Thus, the Legislature expressly declared:
"The financing, acquisition, construction, reconstruction, and rehabilitation of housing and of the real and personal property and other facilities necessary, incidental, and appurtenant thereto are exclusively public uses and purposes for which public money may be spent, advanced, loaned, or granted and are governmental functions of public concern."[4]
Pursuant to the act, the authority may issue bonds[5] and make and execute contracts.[6] It is authorized to make loans directly to persons or families qualified under the act to receive assistance and "[t]o own real and personal property acquired through the use of surplus funds or through public and private partnerships provided that the obligations of the authority are limited to project revenues and no less than 50 percent of the units owned by a housing finance authority shall benefit very low-income families or low-income families."[7]
Authorities are further authorized to make loans to lending institutions to be used by such institutions for the making of new mortgages for qualifying housing developments, and:
"To deposit funds into an account with a lending institution to providesecurity for the lending institution to make loans to eligible persons for the purchase, construction, reconstruction, or rehabilitation of single-family homes or to developers for the construction,reconstruction, or rehabilitation of qualifying housing developments orportions thereof. No funds may be deposited with a lending institution in which any depositing housing finance authority member, officer, or employee has an ownership interest. . . ."[8] (e.s.)
Specific to your inquiry, section 159.608(10), Florida Statutes, authorizes housing finance authorities:
"(a) To make loans or grant surplus funds to corporations that qualify as not-for-profit corporations under s. 501(c)(3) of the Internal Revenue Code of 1986, as amended, and under the laws of this state, for the development of affordable housing; and
(b) To do anything necessary or appropriate to further the purpose for which a housing finance authority is established, pursuant to s.159.602, including, as further described in s. 159.8075, the power to issue mortgage credit certificates to the extent allocation is available for that purpose to qualifying individuals in lieu of issuing qualified mortgage bonds pursuant to ss. 25, 143, and 146 of the Internal Revenue Code of 1986, as amended, or a combination of the two. Mortgage credit certificates may not be issued on December 30 or December 31 of any year."
Subsection (3) of the section gives authorities the power
"[t]o purchase or make commitments to purchase or to make loans for such purpose, and to take assignments of, from lending institutions acting as a principal or an agent of the housing finance authority, mortgage loans and promissory notes accompanying such mortgage loans, including federally insured mortgage loans or participations with lending institutions in such promissory notes and mortgage loans for the construction, purchase, reconstruction, or rehabilitation of the qualifying housing development or portion thereof; provided, that the proceeds of sale or equivalent moneys shall be reinvested in mortgage loans."
A "[q]ualifying housing development" is defined as
"[A]ny work or improvement located or to be located in the state, including real property, buildings, and any other real and personal property, designed or intended for the primary purpose of providing decent, safe, and sanitary residential housing for four or more families, at least 60 percent of whom are eligible persons, whether new construction, the acquisition of existing residential housing, or the remodeling, improvement, rehabilitation, or reconstruction of existing housing, together with such related nonhousing facilities as the authority determines to be necessary, convenient, or desirable."[9]
As you have recognized, housing finance authorities are statutorily created entities possessing only such powers as have been expressly granted or necessarily implied therefrom.[10] While an express power duly conferred may include the implied authority to use the means necessary to carry out the express power, this office has stated on numerous occasions that such implied authority may not warrant the exercise of a substantive power not conferred.[11] Moreover, any reasonable doubt as to the lawful existence of a particular power sought to be exercised is to be resolved against such an exercise.[12]
In Attorney General Opinion 2000-14, this office was asked whether a housing finance authority was authorized to lend surplus funds to private individuals to finance a for-profit, twelve-unit apartment complex for low-income housing. While recognizing that section 159.609, Florida Statutes, prohibits the housing authority from financing a project for its own profit or as a source of revenue to the state or any unit of local government, the opinion found no such prohibition against others, i.e., private individuals doing so. It was concluded, therefore, that the housing authority would be authorized by section 159.608(3), Florida Statutes, to make mortgage loans to private individuals for the purchase of an apartment complex to be rented "for-profit" to low-income families or individuals.
Applying the rationale of Attorney General Opinion 2000-14 to the situation you have proposed, it does not appear that the housing finance authority would be precluded from loaning its surplus funds to a private individual or entity for the development of qualifying housing. Rather, the loaning of such funds would be authorized to fulfill the purposes of the Florida Financing Authority Law.
Accordingly, it is my opinion that the Housing Finance Authority of Palm Beach County may loan funds to for-profit developers for the development of qualifying housing or the construction, purchase, reconstruction, or rehabilitation of qualifying housing under the provisions of Part IV, Chapter 159, Florida Statutes, if such development carries out the purposes of the Florida Financing Authority Law.
Sincerely,
 Bill McCollum Attorney General
BM/tals
[1] You indicate that Palm Beach County Ordinance 79-3 has been amended by Ordinances 91-7, 98-53 and 01-016, and replaced by Ordinance 2002-022, located in ss. 2-181 through 2-191, Palm Beach County Code of Ordinances.
[2] Section 159.601, Fla. Stat.
[3] Section 159.602, Fla. Stat.
[4] Section 159.602(3), Fla. Stat.
[5] See ss. 159.612-159.616, Fla. Stat. And see s. 159.602(4), Fla. Stat., stating that the Congress has determined that housing may be financed by means of obligations issued by a state or local governmental unit, the interest on which is exempt from federal income taxation and "has thereby provided a method to aid state and local governmental units to provide assistance to meet the need for housing."
[6] Section 159.608(1), Fla. Stat.
[7] See s. 159.608(2) and (8), Fla. Stat., respectively.
[8] Section 159.608(5) and (6), Fla. Stat. Subsection (6) [then s.159.608(5)] was added by s. 1, Ch. 88-136, Laws of Florida. During committee hearings on the bill, the language prohibiting a housing finance authority (HFA) from depositing funds with a lending institution in which an HFA member, officer, or employee had an ownership interest was described as a measure to ensure that "no member of a bank board would also have a dual interest with a housing finance authority." Tape 1, Committee on Housing, House of Representatives, May 4, 1988.
[9] Section 159.603(6), Fla. Stat.
[10] See, e.g., Op. Att'y Gen. Fla. 86-13 (1986), and authorities cited therein, stating that a housing authority created pursuant to Part I, Ch. 421, Fla. Stat., possesses only such authority as granted by statute, either expressly or by necessary implication.
[11] See, e.g., Ops. Att'y Gen. Fla. 78-114 (1978), 78-101 (1978), and 78-95 (1978). And see Florida State University v. Jenkins, 323 So. 2d 597
(Fla. 1st DCA 1975) (implied power must be essential in order to carry out the expressly granted power or duty imposed).
[12] State ex rel. Greenberg v. Florida State Board of Dentistry,297 So.2d 628 (Fla. 1st DCA 1974), cert. dismissed, 300 So. 2d 900 (Fla. 1974); City of Cape Coral v. GAC Utilities, Inc., of Florida,281 So. 2d 493 (Fla. 1973). And see State v. Atlantic Coast Line RailroadCompany, 47 So. 969, 974 (Fla. 1908); Gardinier, Inc. v. FloridaDepartment of Pollution Control, 300 So. 2d 75, 76 (Fla. 1st DCA 1974), stating that implied powers accorded administrative agencies must be indispensable to powers expressly granted.