Dear Mr. Dobson:
As attorney for the St. Augustine Port, Waterway and Beach District, you have asked for my opinion on substantially the following question:
Is the St. Augustine Port, Waterway and Beach District authorized to provide a grant to the Junior Service League of St. Augustine, Inc., for purposes of constructing two replica boats which would be donated to a museum in Spain?
In sum:
In light of the requirement that the powers of the St. Augustine Port, Waterway and Beach District must be exercised to improve and maintain waterways within the district, this office cannot conclude that a district purpose would be served by funding a grant to a local service organization for purposes of constructing two replica boats which would be donated to a museum in Spain.
According to your letter, the St. Augustine Port, Waterway and Beach District (the district) has received a request for a grant from the Junior Service League of St. Augustine, Inc., a non-profit corporation which, among other things, sponsors and operates the St. Augustine Lighthouse and Museum. The museum has requested this grant for the purpose of constructing two replica boats similar to those that might have been used by the Spanish settlers of St. Augustine. Following construction, the two boats will be donated by the St. Augustine museum to a similar museum in Spain which would, in turn, donate a boat to the St. Augustine museum for display. You have apparently advised your client of your opinion that this expenditure is not within the scope of the district's authority and have also included with your correspondence a copy of an opinion from counsel to the Lighthouse Archaeology Maritime Program suggesting that such an expenditure may be authorized as "advertising" for the district.
The St. Augustine Port, Waterway and Beach District was created as an independent special district in 1937.[1] Chapter 2000-478, Laws of Florida, codifies all the special acts relating to the district into a single, comprehensive special act charter for the district.[2] In addition to the provisions of the special act, the district is subject to the provisions of Chapter 315, Florida Statutes, the "1959 Port Facilities Financing Law."[3]
The governing authority of the district is the St. Augustine Port, Waterway and Beach Commission, composed of five elected commission members.[4] The commission is designated a corporate body and authorized to contract and be contracted with and to sue and be sued.[5]
Among the specific powers provided to the district in its charter are the following:
"(a) To acquire . . . all property real or personal or any estate or interest therein, within or without the district which . . . the commission shall determine to be necessary for the purposes of the district . . . to improve, maintain, sell, lease, convey, exchange, or otherwise dispose of the same. . . .
(b) To . . . construct, condemn, purchase, own, acquire, add to, maintain, . . . operate, build, equip, manage, . . . control, repair, and establish jetties, piers, quays, wharves, docks, warehouses, storehouses, breakwaters, bulkheads, public landings, slips, seawalls, turning basins, harbors, ports waterways, channels, moles, dry docks, terminal facilities, canals . . . airways, landing fields, conveyors, modern appliances for economical handling of storage and transportation of freight and the handling of passenger traffic, and all other harbor improvements and facilities which . . . the commission may determine to be necessary, and in connection with the operation or improvement of the district, to perform all customary services . . . received or shipped through said harbor.
(c) To improve all navigable and nonnavigable waters situated within the district, to create and improve for harbor purposes any waterways within the district, to regulate and control all such waters and all natural or artificial waterways within the limits of the district, subject to regulatory authority given to other governmental authorities pursuant to general or special law. . . .
(d) To fix . . . the rates of wharfage, dockage, warehousing, storage, and port and terminal charges . . . and to fix and determine the rates, tolls, and other charges for the use of harbor improvements and harbor facilities. . . .
(e) To exercise such police powers as . . . the commission shall determine to be necessary for the effective and complete control, regulation, and protection of the district, and all harbor improvements and facilities. . . .
* * *
(j) To exercise the right of eminent domain and to condemn, appropriate, and acquire any property, both real and personal . . . which . . . the commission shall determine to be necessary. . . .
(l) To advertise Port St. Augustine in such manner as the commission deems advisable, to negotiate and contract with shipping companies, and such other institutions, associations, and companies as the commission may deem necessary for the purpose of advancing and promoting Port St. Augustine."[6]
The commission has the power to levy ad valorem taxes upon all taxable property within the district which must be used "for the purposes authorized and prescribed by this act, subject to the limitations and restrictions herein provided" at a maximum millage rate of 3 mills.[7]
The commission is also authorized to issue bonds for the purpose of paying all or a part of the cost of port facilities.[8]
The grant of powers to port districts under Chapter 315, Florida Statutes, appears to be substantially similar, and potentially more extensive, than those provided in the special act.[9] Section 315.031, Florida Statutes, provides for the promotion and advertisement of port facilities and states that
"[e]ach unit[10] is authorized and empowered:
(a) To publicize, advertise and promote the activities and port facilities herein authorized;
(b) To make known the advantages, facilities, resources, products, attractions and attributes of the activities and port facilities herein authorized;
(c) To create a favorable climate of opinion concerning the activities and port facilities herein authorized;
(d) To cooperate with other agencies, public and private, in accomplishing these purposes;
(e) To enter into agreements with the purchaser or purchasers of port facilities bonds issued under the provisions of this law to establish a special fund to be set aside from the proceeds of the revenues collected under the provisions of s. 315.03(14), during any fiscal year, for the promotional activities authorized herein.
Nothing herein shall be construed to authorize any unit to expend funds for meals, hospitality, amusement or any other purpose of an entertainment nature.
(2) All obligations, expenses and costs incurred under the provisions of this section shall be paid from such fund when vouchers thereof, approved by the governing body of the unit, are exhibited to the responsible authority making disbursements for the governing body."
Research reveals that the terms of this statute have not been litigated and no staff analysis or other illustrative legislative history is available relating to the enactment and legislative purpose of 315.031, Florida Statutes (1967).
As is the case with the charter provisions, the general statutory provisions set forth above must be exercised in such a manner as to accomplish the duties and responsibilities imposed on the St. Augustine Port, Waterway and Beach District by the Legislature relating to the improvement and maintenance of the waterways within the district. The powers of the district commissioners must be exercised within the scope of this legislative directive as is reflected by the legislative qualification that any such exercise must be "determine[d] to be necessary for the purposes of the district."[11]
It is a well established rule that special districts have only such powers as are expressly granted to them by law or those necessarily implied because they are essential to carry into effect those powers expressly granted; any reasonable doubt as to the lawful existence of a particular power sought to be exercised must be resolved against the exercise thereof.[12] While it is clear from a reading of the enabling legislation for the district and the Port Facilities Financing Law that the powers granted to it are broad, those powers are limited to projects that will advance the purposes of the district.[13]
Relying on this same reasoning, this office recently issued Attorney General Opinion 2009-13 to a water control district. This special district was authorized by its charter and by general statutory provisions to purchase real or personal property for district purposes and to own, acquire, operate, and maintain parks and recreational facilities. The opinion noted that the authority of water control districts is limited to accomplishing water control district purposes and concluded that the purchase of a multi-use golf course facility located within the district that included a driving range, restaurant, bar, sewer plant, and related businesses would be beyond the scope of this authority.
In Attorney General Opinion 2007-24, this office recognized the authority of a county water authority to foster and improve tourist business in the county but noted that the exercise of this authority had to be accomplished through improvements to streams, lakes, and canals in the county. Thus, the expenditure of authority funds to host a fishing tournament or to sponsor a soccer league did not appear to be related to the authority's duties and this office concluded that it was not authorized by the enabling legislation of the district.
While the St. Augustine Port, Waterway and Beach District has been granted broad discretion in advertising the port, it is difficult for this office to conceive how providing a grant for a project, the results of which will ultimately be located in Spain, would constitute advertising for the St. Augustine Port, Waterway and Beach District. However, the ultimate determination of whether any expenditure satisfies a district purpose is not one that this office is authorized to make; the board is charged with making this determination.
In sum, it is my opinion that, in light of the requirement that the powers of the St. Augustine Port, Waterway and Beach District must be exercised to improve and maintain waterways within the district, this office cannot conclude that a district purpose would be served by funding a grant to a local service organization for purposes of constructing two replica boats which would be donated to a museum in Spain.
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] See s. 2, Ch. 2000-478, Laws of Fla., and Official List of Special Districts Online, St. Augustine Port, Waterway and Beach District, www.floridaspecialdistricts.org.
[2] Section 1, Ch. 2000-478, Laws of Fla.
[3] See s. 315.01, Fla. Stat., for the short title for Chapter 315, Fla. Stat., and the Official List of Special District Online Information, supra n. 1.
[4] Sections 3 and 5, Ch. 2000-478, Laws of Fla.
[5] Id.
[6] Section 4(a), Ch. 2000-478, Laws of Fla.
[7] Section 8, Ch. 2000-478, Laws of Fla.
[8] Section 315.05(1), Fla. Stat.
[9] See s. 315.03, Fla. Stat.
[10] A "unit" is defined in s. 315.02(4), Fla. Stat., to mean "any county, port district, port authority, or municipality or any governmental unit created pursuant to s. 163.01(7)(d) that includes at least one deepwater port as listed in s. 403.021(9)(b)."
[11] See, e.g., s. 4(a), (b), (e), Ch. 2000-478, Laws of Fla., and s.315.03(10) and (15), Fla. Stat.
[12] See, e.g., Forbes Pioneer Boat Line v. Board of Commissioners ofEverglades Drainage District, 82 So. 346 (Fla. 1919); Op. Att'y Gen. Fla. 89-34 (1989); State ex rel. Greenberg v. Florida State Board ofDentistry, 297 So. 2d 628 (Fla 1st DCA 1974), cert. dismissed, 300 So. 2d 900 (Fla. 1974); City of Cape Coral v. GAC Utilities, Inc., of Florida,281 So. 2d 493 (Fla. 1973).
[13] See e.g., Ops. Att'y Gen. Fla. 2009-13 (water control district not authorized to purchase multi-use golf course facility located within district that includes a driving range, restaurant, bar, sewer plant, and related businesses); 2007-24 (use of water authority's funds to host a fishing tournament or sponsor a soccer league would not appear to be related to authority's duties to foster and improve tourism through improvement of streams, lakes, canals); 86-90 (1986).