656 So.2d 1307 (1995)
CITRUS COUNTY, FLORIDA and Cypress and Oaks Villages Association, Appellants,
v.
SOUTHERN STATES UTILITIES, INC., and The Florida Public Service Commission, Appellees.
Nos. 93-3324, 93-4089.
District Court of Appeal of Florida, First District.
April 6, 1995.
As Corrected on Denial of Rehearing June 27, 1995.
*1308 Robert A. Butterworth & Michael A. Gross of Office of the Atty. Gen., Tallahassee and Michael B. Twomey, Tallahassee, for appellant Citrus County.
Susan W. Fox of Macfarlane, Ausley, Ferguson & McMullen, Tampa, for appellant Villages Ass'n.
Jack Shreve and Harold McLean of Office of Public Counsel, Tallahassee, for appellant Citizens of Florida.
Kenneth A. Hoffman of Rutledge, Ecenia, Underwood, Purnell & Hoffman, P.A., Tallahassee and Brian P. Armstrong of Southern *1309 States Utilities, Inc., Apopka, for appellee Southern States Utilities.
Robert D. Vandiver & Christiana T. Moore, Tallahassee, for appellee Florida Public Service Com'n.
WENTWORTH, Senior Judge.
This is an appeal from a final order of the Public Service Commission (PSC) adopting uniform statewide rates for 127 water and wastewater utility systems owned by Southern States Utilities, Inc. (SSU). We reverse.
SSU has, over the last decade, bought small independent water and wastewater utilities throughout the states, and currently serves approximately 180,000 customers in Florida. On May 11, 1992, SSU filed an application with the PSC pursuant to chapter 367, Florida Statutes, for authority to increase the water and wastewater rates and charges for 127 of its systems. In its application, SSU proposed that the PSC calculate its new rates on a modified stand-alone basis that would involve a cap on the charge per gallon each customer would pay. The Citizens of Florida intervened through the Office of Public Counsel on May 21, 1992, and Citrus County and Cypress and Oaks Villages Association intervened at a later date.
Before a decision in this case, the PSC conducted ten service hearings throughout the state to permit customer participation in the ratemaking process, and held a technical hearing to receive evidence. On March 22, 1993, the PSC issued its Final Order, approving a 26.77% increase in SSU's annual revenue from its water systems, and a 48.61% increase in revenue from its wastewater systems. The order also approved a new rate structure for SSU in the form of statewide uniform rates for the 75,000 water customers and over 25,000 wastewater customers served by the 127 utility systems involved in this case. In making its decision on rate structure, the Commission cited a number of advantages that would result from the implementation of uniform statewide rates, and found that "the wide disparity of rates calculated on a stand-alone basis, coupled with the above cited benefits of uniform, statewide rates, outweighs the benefits of the traditional approach of setting rates on a stand-alone basis." Numerous motions for reconsideration were filed following the issuance of this order, but each was denied after the Commission staff approved implementation of the increased rates granted in the Final Order by approving revised tariff sheets for the affected SSU systems.
Citrus County and Cypress and Oaks Villages Association appealed the PSC's decision to approve statewide uniform rates for the affected utility systems, arguing that (1) there was no evidence in the record to support such rates; (2) the rates violated section 367.081(2)(a), Florida Statutes; (3) they were denied due process because the statewide uniform rate issue was not properly noticed; (4) the new rate structure resulted in a taking of their contributions-in-aid-of-construction (CIAC); (5) the order violated the doctrine of administrative res judicata; and (6) the staff's implementation of the new rates before the final order became final violated their due process rights. We decline to address each issue separately because we reverse on the ground that the PSC exceeded its statutory authority when it approved uniform statewide rates for the 127 systems involved in this proceeding, based on the evidence produced.
The Water and Wastewater System Regulatory Law, codified at chapter 367, Florida Statutes, grants the PSC authority to set rates for those utilities within its jurisdiction. We conclude that chapter 367 does not give the PSC authority to set uniform statewide rates that cover a number of utility systems related only in their fiscal functions by reason of common ownership. Florida law instead allows uniform rates only for a utility system that is composed of facilities and land functionally related in the providing of water and wastewater utility service to the public. Section 367.171(7), Florida Statutes (1991), grants the PSC exclusive jurisdiction, with some exceptions, over "all utility systems whose service transverses county boundaries." The term "system" is defined as "facilities and land used or useful in providing service and, upon a finding by the commission, may include a combination of functionally related facilities and land." *1310 § 367.021(11), Fla. Stat. (1991) (emphasis added).
This court analyzed the PSC's jurisdiction in Board of County Commissioners v. Beard, 601 So.2d 590 (Fla. 1st DCA 1992), adjudicating a challenge to a PSC order which declared that the PSC, rather than St. Johns County, had jurisdiction over water and wastewater services provided by Jacksonville Suburban Utilities Corporation (JSUC) within St. Johns County. JSUC operated water and sewer facilities in Duval, Nassau and St. Johns counties that were managed from a central office and shared the same manager, officers, engineers, accountants, maintenance personnel, customer service representatives and testing laboratories. Id. at 592. JSUC also performed other functions on a system-wide basis, including purchasing, budgeting, planning and staffing. Id. Based on these relationships the company argued that all of its facilities were part of a single utility system, which placed it within the ambit of the PSC's jurisdiction as enunciated in section 367.171(7). This court agreed, rejecting the county's argument that JSUC's facilities must be physically connected to constitute a functionally related system under section 367.021(11), and finding that the undisputed evidence established that JSUC's facilities were interrelated not only administratively but also operationally, such that the company should be regulated by the PSC.
Here, we find no competent substantial evidence that the facilities and land comprising the 127 SSU systems are functionally related in a way permitting the PSC to require that the customers of all systems pay identical rates. Section 367.021(11) requires that the facilities and land used or useful in providing service to the customers of the systems be considered in setting rates. The only exception to this requirement occurs "upon a finding by the commission" that a "combination of functionally related facilities and land" constitutes one system such that rates may be uniformly set for all customers within that system. No such finding was made here, and could not properly be made given the apparent absence of evidence that the systems were operationally integrated, or functionally related, in any aspect of utility service delivery other than fiscal management. Commissioners Beard and Clark set identical rates for the 127 water and wastewater systems owned by SSU because they believed that the benefits of uniform statewide rates outweighed the benefits of the traditional approach of setting rates on a stand-alone basis. We find this belief insufficient to support the order.
In reviewing an order of the PSC, this court must determine from the record whether it is supported by competent, substantial evidence. Citizens v. Florida PSC, 425 So.2d 534, 538 (Fla. 1982). Four witnesses testified on the issue of statewide uniform rates at the final hearing in this matter. Although three of them testified that statewide uniform rates provided the advantages cited by the PSC in a generic sense, each of them unequivocally stated that SSU was not presently in a position to fairly implement such rates. Forrest L. Ludsen, Vice President in charge of Customer Service for SSU, felt that in the future SSU may be ready for uniform rates set according to rate bands that would lump the customers of similarly situated systems together; Joseph P. Cresse, a non-lawyer special consultant and former member of the Florida PSC, recommended that rates be calculated by dividing the 127 systems into four to six categories or rate bands after the company's CIAC charges were restructured; and Mr. John D. Williams, a member of the PSC staff, testified that it would be too extreme to set uniform rates in this case, especially without restructuring the CIAC for each system.
It is clear that this testimony does not constitute competent substantial evidence to support the PSC's decision to set uniform statewide rates for the systems involved. The systems are not functionally related as required by section 367.021(11), their relationship being apparently confined to fiscal functions resulting from common ownership. SSU's systems differ greatly in their levels of CIAC, their size, their age, the number of customers served, the status of the system when SSU acquired it, their consumption levels, and the type of treatment used. Counsel for SSU indicated at oral argument that, although the 127 systems involved in *1311 this case are fiscally related, they are not otherwise related in a utility operational sense. Until the Commission finds that the facilities and land owned by SSU and used to provide its customers with water and wastewater services are functionally related as required by the statute, uniform rates may not lawfully be approved.
The Commission's order must be reversed based on our finding that chapter 367, Florida Statutes, did not give the Commission authority to approve uniform statewide rates for these utility systems which are operationally unrelated in their delivery of utility service. As an administrative agency created by the legislature, "the Commission's power, duties and authority are those and only those that are conferred expressly or impliedly by statute of the State." Rolling Oaks Utilities v. Florida PSC, 533 So.2d 770, 773 (Fla. 1st DCA 1988). "Any reasonable doubt as to the lawful existence of a particular power that is being exercised by the Commission must be resolved against the exercise thereof, and the further exercise of the power should be arrested." City of Cape Coral v. GAC Utilities, Inc., 281 So.2d 493, 496 (Fla. 1973) (citations omitted).
Lastly, we address the Office of Public Counsel's contention that the Commission erred by not recognizing SSU's gain on the sale of two of its systems because this allows SSU to earn a greater than reasonable rate of return on its investment, in violation of section 367.081(2)(a), Florida Statutes (1991). We are not persuaded by this argument.
Section 367.081(2)(a) requires that in setting rates, the Commission must allow the utility to collect a fair return on its investment in property used and useful in the public service. The rate of return "cannot be set so low as to confiscate the property of the utility, nor can it be made so high as to provide greater than a reasonable rate of return, thereby prejudicing the consumer." United Telephone Co. v. Mayo, 345 So.2d 648, 651 (Fla. 1977). The Citizens have not carried their burden of showing that the Commission failed to comply with the essential requirements of law. Id. at 653. The Commission has the responsibility of determining a reasonable rate of return for the utility, and our review of that decision is limited. Id. at 654.
Here, there was a divergence of opinion as to the proper treatment of the sale proceeds and the Commission exercised its discretion in accepting the opinion of the utility's witness over the Citizens. We will not disrupt that choice. "It is the Commission's prerogative to evaluate the testimony of competing experts and accord whatever weight to the conflicting opinions it deems appropriate." United Telephone Co., 345 So.2d at 654. The Commission did not deviate from the essential requirements of law when it declined to take the proceeds into account in determining SSU's rates and thus, this portion of the order should be affirmed.
Accordingly, the portion of the order setting uniform statewide rates is reversed, but the Commission's refusal to take into account the utility's gain on the sale of two of its systems is affirmed. The cause is remanded for disposition consistent herewith.
ZEHMER, C.J., and DAVIS, J., concur.