OVERTON, Justice.
GTE Florida Incorporated (GTE) appeals a Public Service Commission (PSC) order that implements a remand from this Court. In that remand, we affirmed in part and reversed in part a prior PSC order disposing of a requested rate increase by GTE. The PSC, in its initial proceeding, denied GTE’s proposed rate increase and, instead, ordered that GTE revenues be reduced by $13,641,-000. We reversed the PSC order insofar as it denied GTE recovery of certain costs simply because those expenditures involved purchases from GTE’s affiliates. We found that those costs were clearly recoverable and that it was an abuse of discretion for the PSC to deny recovery. GTE Florida Inc. v. Deason, 642 So.2d 545 (Fla.1994). Accordingly, we issued our mandate on July 7, 1994, and remanded for further aetion. The PSC, in implementing our decision, entered an order that only allowed recovery of the disputed expenses on a prospective basis from May 8, 1995. This effective date was over nine months after our mandate issued. As noted, our decision was final on July 7, 1994, and the initial erroneous order was entered by the PSC on May 27, 1993. The issue in this cause is whether GTE should be able to recover its expenses, erroneously denied in the first instance, for the period between May 27, 1993, and May 3, 1995. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const.
We reverse the PSC’s order implementing our remand. We mandate that GTE be allowed to recover its erroneously disallowed expenses through the use of a surcharge. However, no customer should be subjected to a surcharge unless that customer received GTE services during the disputed period of time.
In our decision reversing the PSC’s original order insofar as it denied GTE recovery of certain expenses, we stated:
We do find, however, that the PSC abused its discretion in its decision to reduce in whole or in part certain costs arising from transactions between GTE and its affiliates, GTE Data Services and GTE Supply. The evidence indicates that GTE’s costs were no greater than they would have been had GTE purchased the services and supplies elsewhere. The mere fact that a utility is doing business with an affiliate does not mean that unfair or excess profits are being generated, without more. Charles F. Phillips, Jr., The Regulation of Public Utilities 244-55 (1988). We believe the standard must be whether the transactions exceed the going market rate or are otherwise inherently unfair. See id. If the answer is “no,” then the PSC may not reject the utility’s position. The PSC obviously applied a different standard, and we thus must reverse the PSC’s determination of this question.
Deason at 547 — 48.
On remand, GTE proposed a surcharge as the appropriate mechanism by which to recover its expenses incurred during the appeal and remand. The PSC denied GTE’s proposal. The PSC ruled that GTE’s failure to request a stay during the pendency of the appellate and remand processes precluded it from recovering expenses incurred during that time period. In this review, the PSC also argues that the imposition of a surcharge would constitute retroactive rate-making. We reject both contentions.
Both the Florida Statutes and the Florida Administrative Code have provisions by which GTE could have obtained a stay.[1] However, neither of those mechanisms is mandatory. We view utility ratemaking as a matter of fairness. Equity requires that both ratepayers and utilities be treated in a similar manner. While the facts of Village of North Palm Beach v. Mason, 188 So.2d 778 (Fla.1966), were different from those we now *973 encounter, we find that Justice O’Connell’s reasoning is appropriate in this case. He stated:
It would be inequitable to defer the utility’s right to the increased rates for approximately two years because of what we found to be a defect in the order entered by the commission. The soundness of what we do here is demonstrated by the fact that if the instant case had involved an order decreasing rates it would be equally inequitable to allow the utility to continue to collect the old and greater rates for the period between the entry of the first and second orders.
Id. at 781.
Justice O’Connell was stating that equity applies to both utilities and ratepayers when an erroneous rate order is entered. It would clearly be inequitable for either utilities or ratepayers to benefit, thereby receiving a windfall, from an erroneous PSC order. The rule providing for stays does not indicate that a stay is a prerequisite to the recovery of an overcharge or the imposition of a surcharge. The rule says nothing about a waiver, and the failure to request a stay is not, under these circumstances, dispositive.
We also reject the contention that GTE’s requested surcharge constitutes retroactive ratemaking. This is not a case where a new rate is requested and then applied retroactively. The surcharge we sanction is implemented to allow GTE to recover costs already expended that should have been lawfully recoverable in the PSC’s first order. In this respect, this case is analogous to Mason. Additional support for our position is found by examining the method by which the PSC addresses the reciprocal situation. The PSC has taken a position contrary to its current stance when a utility has overcharged its ratepayers. In the order implementing the remand in Citizens v. Hawkins, 364 So.2d 723 (Fla.1978), the PSC ordered that a refund be paid by the utility. In re Application of Holiday Lake Water System for Authority to Increase its Rates in Pasco County, 5 F.P.S.C. 630 (1979). If the customers can benefit in a refund situation, fairness dictates that a surcharge is proper in this situation. We cannot accept the contention that customers will now be subjected to unexpected charges. The Office of Public Counsel has represented the citizen ratepayers at every step of this procedure. We find that the surcharge for recovery of costs expended is not retroactive ratemaking any more so than an order directing a refund would be. We note that the PSC was advised by its staff that GTE’s recovery of expenses and costs would not constitute retroactive ratemaking. Fla.Pub.Serv.Comm’n, Staff Memorandum at 4 (Docket No. 920188-TL, March 23,1995).
Finally, we address the structure of the current surcharge. The PSC has acknowledged it has the ability to closely tailor the implementation of refunds and to accurately monitor refund payments to ensure that the recipients of such refunds truly are those who were overcharged. While no procedure can perfectly account for the transient nature of utility customers, we envision that the surcharge in this ease can be administered with the same standard of care afforded to refunds, and we conclude that no new customers should be required to pay a surcharge.
Accordingly, for the reasons expressed, the order below is reversed and the cause is remanded for further action consistent with this opinion.
It is so ordered.
GRIMES, C.J., and SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.

. See § 120.68(3)(a), Florida Statutes (1995); Fla.Admin.Code R. 25-22.061.