687 So.2d 1346 (1997)
SUGARMILL WOODS CIVIC ASSOCIATION, INC. f/k/a Cypress & Oaks Villages Association, Inc. and Spring Hill Civic Association, Appellant,
v.
SOUTHERN STATES UTILITIES and Florida Public Service Commission, Appellees.
HERNANDO COUNTY, Appellant,
v.
SOUTHERN STATES UTILITIES and Florida Public Service Commission, Appellees.
Nos. 95-425, 95-457.
District Court of Appeal of Florida, First District.
February 4, 1997.
*1347 Susan W. Fox of Macfarlane, Ausley, Ferguson &McMullen, Tampa, for Appellant/Sugarmill Woods Civic Association.
Michael B. Twomey, Tallahassee, for Appellant/Spring Hill Civic Association.
Robert Bruce Snow, Brooksville, for Appellant/Hernando County.
Robert D. Vandiver, General Counsel; and Christiana T. Moore, Associate General Counsel, Tallahassee, for Appellee/Florida Public Service Commission.
Arthur J. England, Jr., of Greenberg, Traurig, Hoffman, Lipoff, Rosen and Quentel, P.A., Miami; Brian P. Armstrong, Apopka; and Kenneth A. Hoffman and William B. Willingham of Rutledge, Ecenia, Underwood, Purnell & Hoffman, P.A., Tallahassee, for Appellee/Southern States Utilities, Inc.
DAVIS, Judge.
Appellants, Sugarmill Woods Civic Association (Sugarmill), Spring Hill Civic Association (Spring Hill), and Hernando County, seek review of an order rendered by the Public Service Commission (PSC) on January *1348 11, 1995. In that order, the PSC set uniform statewide rates for water and wastewater customers of Southern States Utilities, Inc.'s (SSU) systems in Florida, and set a separate rate for SSU bulk sales of wastewater service to Hernando County. Appellants also appeal an interlocutory order in which the PSC granted motions to quash subpoenas duces tecum, thereby denying certain discovery sought by appellant Hernando County. Finding no abuse of discretion, we affirm the order quashing the subpoenas, as well as the Hernando County bulk wastewater rate. We, however, reverse the order setting a uniform statewide rate structure for SSU customers because that order does not contain the findings necessary to establish the PSC's jurisdiction to set the rates.
The PSC and SSU both concede that the order setting a uniform statewide rate structure for SSU customers is defective because it lacks the findings that this court has held are a necessary predicate to establishing PSC jurisdiction to set rates effective in both jurisdictional and non-jurisdictional counties. See Citrus County v. Southern States Utilities, 656 So.2d 1307 (Fla. 1st DCA), review denied mem., 663 So.2d 631 (Fla.1995); Board of County Commissioners of St. Johns County v. Beard, 601 So.2d 590 (Fla. 1st DCA 1992). After filing of the notice of appeal in this case, the PSC moved to relinquish jurisdiction back to the PSC due to its failure to make these findings. The PSC more recently filed a motion to dismiss the appeal from the order setting uniform statewide rates, contending that this appeal is moot, confessing error, and reciting that it has now retracted the uniform statewide rate structure and established modified standalone rates effective in jurisdictional counties. Although we accept the PSC's confession of error, we reject its contention that the appeal is moot.
It is regrettable that the resolution of this issue has been unnecessarily complicated by the piecemeal manner in which it has been addressed. On January 27, 1993, SSU filed a petition for a declaratory statement regarding PSC jurisdiction over SSU's water facilities in St. Johns County. While that case was pending, on March 22, 1993, in a separate proceeding, the PSC issued a final order approving a new rate structure for SSU in the form of statewide uniform rates for the customers served by 127 water and wastewater utility systems owned by SSU in Florida. Citrus County and Cypress and Oaks Villages Association appealed the PSC's decision to approve uniform rates. This court reversed, holding that in order to have authority to set uniform statewide rates, the PSC must make a finding that the facilities and land are part of a single functionally related system. The Court explained:
We conclude that chapter 367, Florida Statutes, does not give the PSC authority to set uniform statewide rates that cover a number of utility systems related only in their fiscal functions by reason of common ownership. Florida law instead allows uniform rates only for a utility system that is composed of facilities and land functionally related in the providing of water and wastewater utility service to the public. Section 367.171(7), Florida Statutes (1991), grants the PSC exclusive jurisdiction, with some exceptions, over "all utility systems whose service transverses county boundaries." The term "system" is defined as "facilities and land used or useful in providing service and, upon a finding by the commission, may include a combination of functionally related facilities and land." § 367.021, Fla.Stat. (1991) ...
In Citrus County this court held that the March 22, 1993, order set statewide rates without making the necessary predicate finding that the facilities and land formed a functionally related system, and therefore the PSC lacked authority to set statewide uniform rates. Citrus County, 656 So.2d at 1309-10. We explained further that "functionally related" systems need not be physically interconnected, but must be integrated in the operational aspects of utility service delivery, not merely administratively or fiscally interconnnected. Id. at 1310-11.
Despite the March 22, 1993, order setting statewide uniform rates (and during the pendency of the appeal of that order), the PSC subsequently ruled in a separate order on SSU's first petition for declaratory statement regarding jurisdiction over water facilities *1349 in St. Johns County. That order, rendered August 10, 1993, found that SSU's facilities in St. Johns County received "[a]ll administrative and operational services ... primarily through Southern States' Woodmere facility in Duval County, which is under the jurisdiction of this Commission, and also through employees and facilities in Putnam, Volusia and Orange Counties." The Commission found that St. Johns County is contiguous to Duval County and Putnam County, and that budgeting, personnel management, purchasing, billing and collection, strategic and operational planning, accounting, engineering, environmental permitting and compliance, meter readers and maintenance services all transversed county lines. While some of those services extended from the noncontiguous central office in Orange County, the PSC expressly found, sufficient services transversed the boundaries of contiguous counties to support a finding that the facilities in St. Johns and Duval Counties formed a system, a combination of functionally related facilities, and that the PSC had exclusive jurisdiction over SSU's facilities in St. Johns County. In Re: Southern States Utilities, Inc.'s Petition for a Declaratory Statement Regarding Commission Jurisdiction Over its Water Facilities in St. Johns County, 93 F.P.S.C. 8:181 (1993). That decision was not appealed.
On September 23, 1993, SSU filed a second petition for declaratory statement regarding the PSC's jurisdiction. That petition related only to SSU's facilities in Polk and Hillsborough Counties. On its own motion, the PSC converted that petition into an "Investigation into the appropriate rate structure for Southern States Utilities, Inc. for all regulated systems in Bradford, Brevard, Citrus, Clay, Collier, Duval, Hernando, Highlands, Lake, Lee/Charlotte, Marion, Martin, Nassau, Orange, Osceola, Pasco, Putnam, Seminole, St. Johns, St. Lucie, Volusia, and Washington Counties." That investigation culminated in the order under review, rendered January 11, 1995, once again setting statewide rates for SSU.
In the present case, the PSC expressly excluded from its consideration whether all of SSU's facilities and land comprise a single system providing service transversing county boundaries. The December 16, 1993, "Order Setting Issues" stated repeatedly that the issue of the Commission's legal authority to set rates using a statewide uniform rate structure could not be raised in the present case because it had been resolved in the March 22, 1993, order, and was precluded by the doctrine of administrative finality. Four months after rendition of the final order now appealed, this court decided Citrus County v. Southern States Utilities, supra, reversing the March 22, 1993, order on the ground that the PSC exceeded its statutory authority when it approved uniform statewide rates without first making a finding that SSU's facilities and land were "functionally related" in utility service delivery so as to comprise a single system. As stated above, the PSC has now properly confessed it erred in entering the order presently before us by not making the requisite findings.
In another separate docket the PSC entered an order on July 21, 1995, which set no rates, but decided that the PSC has jurisdiction over SSU facilities throughout Florida because they are functionally related and comprise a single system providing service transversing county boundaries. SSU, but not the PSC, takes the position that this subsequent order has become the law and should be retroactively applied to validate the order under review in the present appeal. A subsequent order by the body which rendered the order under review is not the kind of "change in the law" which the appellate court is bound to apply to pending cases. Rather, that rule applies when there has been either a statutory change between the trial and the appeal, or a controlling appellate case precedent changing the interpretation of a statute or rule. See Florida East Coast Railway Co. v. Rouse, 194 So.2d 260, 262 (Fla.1966) (intervening appellate decision holding comparative negligence statute unconstitutional must be applied by appellate court, as would a statutory change between the trial and appeal); Hillhaven Corp. v. Florida Dep't of Health and Rehabilitative Services, 625 So.2d 1299 (Fla. 1st DCA 1993), review denied mem., 634 So.2d 623 (Fla.1994) (applying holding from intervening Florida *1350 Supreme Court decision); In re Forfeiture of 1985 Mercedes, 596 So.2d 1261 (Fla. 1st DCA 1992) (applying holding from intervening Florida Supreme Court decision).
Because the instant order does not contain the findings of functional relatedness required under Citrus County, we reverse the order setting uniform statewide rates. Therefore, we do not address the issues raised by appellants regarding the reasonableness of the statewide rate and whether the adoption of a statewide rate results in confiscation of contributions-in-aid-of-construction without compensation in violation of the state and federal constitutions. We, however, will address the issues relating to discovery and the bulk wastewater rate for Hernando County, which the parties appear to agree would not be resolved by the reversal of the uniform statewide rate.
We affirm the order setting the Hernando County Utilities Department bulk wastewater rate of $2.35 per thousand gallons. This court must affirm if the order of the PSC is supported by competent substantial evidence. Citizens v. Florida Public Service Comm'n, 425 So.2d 534, 538 (Fla. 1982). Eight alternative rates were presented below, of which the rate chosen was one. The $2.35 rate was derived from the freely negotiated contract rate of $2.15 per thousand gallons (agreed to by these parties or their predecessors-in-interest in 1984) after annual index adjustments. The PSC's exercise of its discretion in selecting this rate is clothed with a presumption of validity. Id.
Hernando County asserts that this rate is not reasonable, relying upon a cost of service study yielding a substantially lower rate based upon a methodology developed by PSC staff member Jerrold Chapdelain, a bulk rate expert. However, Mr. Chapdelain himself testified that he would start from the basis of a negotiated rate if there was one, and then review it to make sure that costs were adequately covered at the negotiated rate and that different classes of customers were being treated fairly in relationship to each other. He agreed that if he had prepared the memorandum containing the methodology for setting bulk rates today, he might utilize avoided cost as one of the factors to be considered. He agreed, under questioning by Commissioner Clark, that a prudent utility negotiating a bulk rate would consider the alternatives, in order to get the best price for its captive customers, and that would be "reasonable." He expressly stated that he was not making a recommendation as to a specific rate, thus negating any suggestion that he was sponsoring the rate derived from the use of the methodology in his memo. Mr. Chapdelain agreed that there is no one correct method for determining a bulk rate. He testified that the Commission could come up with a fair and reasonable rate which did not follow the formula in the memorandum. Finally, he agreed that the floor of a reasonable rate would be the cost to provide it, and the ceiling would be the cost of an alternative source. Moreover, there is competent substantial evidence in the testimony of Mr. Radacky and Mr. Ludsen to support the conclusion that the $2.35 per thousand gallons rate is fair and reasonable. Accordingly, we affirm that portion of the order under review.
We turn now to the discovery issue raised by appellant Hernando County, and adopted by the remaining appellants. The disputed subpoenas duces tecum were served on a large number of members of the PSC's staff, as well as one attorney for SSU. Appellees objected that this was a "fishing expedition" designed largely to disrupt the efficient working relationship between the PSC and its own staff. Appellants now suggest that the prehearing officer who entered the order quashing subpoenas erred because it was impossible to reach the conclusion that the discovery was irrelevant before the questions had actually been asked to the deponents. The cases relied upon by appellants to assert that such discovery must be objected to on a question-by-question basis are distinguishable, because they involved the privilege against self-incrimination, which is usually asserted on a question-by-question basis. See, e.g., Patchett v. Commission on Ethics, 626 So.2d 319 (Fla. 1st DCA 1993); Kanji v. Valli, 621 So.2d 750 (Fla. 5th DCA 1993); Fischer v. E.F. Hutton & Co., Inc., 463 So.2d 289 (Fla. 2d DCA 1984). But see, e.g., Rainerman v. Eagle National Bank of *1351 Miami, 541 So.2d 740 (Fla. 3d DCA 1989) (issues to be addressed in requested deposition in aid of execution were so narrow, and so clearly related to allegations of fraudulent bank transactions, that borrower was permitted to assert privilege against self-incrimination as to the entire deposition rather than on a question-by-question basis). In contrast, in the present case, the objection to these depositions was not based upon the privilege against self-incrimination.
Moreover, the prehearing officer did not rule that the subpoenas for depositions duces tecum should be quashed based upon any privilege whatsoever. She declined to find the existence of a privilege, but analyzed the public policy foundations for the claim that SSU's attorney and the subpoenaed PSC staff members should not be required to participate in the depositions. In Dade County Medical Ass'n v. Hlis, 372 So.2d 117 (Fla. 3d DCA 1979), the court found that the records sought by subpoenas duces tecum were not protected by privilege, but that public policy supported the denial of the discovery, after "a proper balancing of the competing interests to be served by granting discovery or by denying it." Id. at 120-21.
The prehearing officer had the discretion to weigh the competing interests of the parties. Id. The motion for protective order which was filed below asserted that this broad discovery request was a "fishing expedition." A trial court has authority to prevent discovery which it believes is a mere fishing expedition calculated for harassment. Krypton Broadcasting of Jacksonville, Inc. v. MGM-Pathe Communications Co., 629 So.2d 852, 855 (Fla. 1st DCA 1993). "[I]t is impossible to establish rules for every possible sequence of events and types of violations that may ensue in the discovery process." Mercer v. Raine, 443 So.2d 944, 946 (Fla.1983). Therefore, such decisions regarding discovery are true discretionary acts, and the appellate court must defer to the superior vantage point of the trial judge who has seen the parties first-hand and is more fully informed regarding the case. Id. at 945-46. Appellants failed to demonstrate an abuse of discretion justifying reversal of this order, and therefore we affirm the order quashing subpoenas.
Accordingly, we AFFIRM the order setting the Hernando County bulk wastewater rate, and the order granting the motion to quash subpoenas duces tecum and for protective order. We REVERSE the order adopting uniform statewide rates.
ERVIN and KAHN, JJ., concur.