704 So.2d 555 (1997)
SOUTHERN STATES UTILITIES, INC.
v.
FLORIDA PUBLIC SERVICE COMMISSION.
KEYSTONE HEIGHTS and Marion Oaks Civic Association
v.
SOUTHERN STATES UTILITIES, INC., and Florida Public Service Commission.
BURNT STORE MARINA
v.
PUBLIC SERVICE COMMISSION.
Nos. 96-3334, 96-3454 and 96-3489.
District Court of Appeal of Florida, First District.
June 17, 1997.
*556 Arthur J. England, Jr. and Joe N. Unger of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, Miami; Kenneth A. Hoffman of Rutledge, Ecenia, Underwood, Purnell & Hoffman, P.A., Tallahassee; and Brian P. Armstrong of Southern States Utilities, Inc., Apopka, for Southern States Utilities, Inc.
Robert D. Vandiver, Christiana T. Moore, and Richard C. Bellak, Tallahassee, for Florida Public Service Commission.
Joseph A. McGlothlin and Vicki Gordon Kaufman of McWhirter, Reeves, McGlothlin, Davidson, Rief & Bakas, Tallahassee, for City of Keystone Heights and Marion Oaks Civic Association.
Darol H.M. Carr of Farr, Farr, Emerich, Sifrit, Hackett and Carr, P.A., Port Charlotte, for Burnt Store Marina.
Susan W. Fox of Macfarlane, Ferguson & McMullen, Tampa for Sugarmill Woods Association, Inc., and Michael B. Twomey, Tallahassee for Citrus County Civic Board of County Commissioners.
Michael A. Gross, Assistant Attorney General, Tallahassee and Larry M. Haag, County Attorney, Inverness, Co-counsel for Citrus County.
KAHN, Judge.
Southern States Utilities, Inc. (SSU) appeals an order entered by the Public Service Commission (PSC) on remand from this court's decision in Citrus County v. Southern States Utilities, Inc., 656 So.2d 1307 (Fla. 1st DCA 1995). In that case, we affirmed in part and reversed in part a PSC order approving increased rates and charges for 127 of SSU's water and wastewater service areas based on a uniform statewide rate structure. Specifically, we reversed the order "on the ground that the PSC exceeded its statutory authority when it approved uniform statewide rates for the 127 systems involved in this proceeding, based on the evidence produced." Citrus County, 656 So.2d at 1309. We affirmed the PSC's refusal to take into account SSU's gain on the sale of two of its systems in determining SSU's rates and remanded the cause "for disposition consistent herewith." Id. at 1311. On remand, the PSC approved modified stand-alone rates for *557 SSU's systems.[1] Because the PSC erred, however, in its consideration of GTE Florida Inc. v. Clark, 668 So.2d 971 (Fla.1996), with regard to the issue of whether SSU may surcharge the customers who underpaid under the erroneously approved uniform rates, we reverse and remand this case for further proceedings. In addition, on remand, we direct the PSC to reconsider its decision denying intervention by cross-appellants Keystone Heights, Marion Oaks Civic Association, and Burnt Store Marina.[2]
On remand from this court's decision in Citrus County, the PSC found it appropriate to change the rate structure to comply with the court's mandate, and it thus approved a modified stand-alone rate structure for SSU. As the PSC observed in its order, "[t]he utility's revenue requirement was never challenged as a point on appeal" and "[a]ccordingly, it shall not be changed." The PSC further observed, however, "[t]his change in the rate structure results in a rate decrease for some customers and a rate increase for others." The PSC then directed SSU to provide refunds to customers who had overpaid under the erroneous uniform rate structure, but determined that SSU could not collect surcharges from those customers who had underpaid as "such action would violate the prohibition against retroactive ratemaking." The PSC explained that it could order the refunds without violating retroactive ratemaking concepts because SSU had "accepted the risk" of implementing the uniform rates when SSU filed a motion to vacate the stay in effect as a result of Citrus County's appeal:
Upon reviewing the language from the Order Vacating the Stay and the transcripts from the Agenda Conference in which we voted on the utility's Motion to Vacate the Stay, we find that the utility accepted the risk of implementing the rates. It is clear that we recognized the need to secure the revenue increase both as a condition of vacating the stay and to insure funding of refunds in the event refunds were required. Having established a refund condition for those revenues, we can order a refund without violating retroactive ratemaking concepts.
Before SSU acted pursuant to the PSC's decision on remand, however, the Florida Supreme Court issued its opinion in GTE Florida, Inc. v. Clark. Because the PSC determined that Clark might impact its decision on remand, it voted to reconsider its decision.
In Clark, GTE Florida (GTE) appealed a PSC order implementing a remand from the supreme court. 668 So.2d at 972. In that remand, the supreme court had affirmed in part and reversed in part a prior PSC order disposing of a requested rate increase by GTE. Id. The court had reversed the prior order "insofar as it denied GTE recovery of certain costs simply because those expenditures involved purchases from GTE's affiliates" because the court "found that those costs were clearly recoverable and that it was an abuse of discretion for the PSC to deny recovery." Id. In its order implementing the supreme court's remand, however, the PSC allowed recovery of the disputed expenses only on a prospective basis beginning nine months after the mandate issued. Id. In Clark, the supreme court reversed the PSC's order implementing the remand and mandated that GTE be allowed to recover its *558 erroneously disallowed expenses through the use of a surcharge. Id.
In particular, the supreme court rejected the two reasons offered by the PSC for denying GTE's proposed surcharge. The PSC contended (1) GTE's failure to request a stay during the pendency of the appellate and remand processes precluded it from recovering expenses incurred during that period, and (2) the imposition of a surcharge would constitute retroactive ratemaking. Id. The court explained that GTE's failure to request a stay was not dispositive:
Both the Florida Statutes and the Florida Administrative Code have provisions by which GTE could have obtained a stay. However, neither of these mechanisms is mandatory. We view utility ratemaking as a matter of fairness. Equity requires that both ratepayers and utilities be treated in a similar manner.... [E]quity applies to both utilities and ratepayers when an erroneous rate order is entered. It would clearly be inequitable for either utilities or ratepayers to benefit, thereby receiving a windfall, from an erroneous PSC order. The rule providing for stays does not indicate that a stay is a prerequisite to the recovery of an overcharge or the imposition of a surcharge. The rule says nothing about waiver, and the failure to request a stay is not, under these circumstances, dispositive.
Id. at 972-73 (footnote and citations omitted). The court further explained that a surcharge in this circumstance did not constitute retroactive ratemaking:
We also reject the contention that GTE's requested surcharge constitutes retroactive ratemaking. This is not a case where a new rate is requested and then applied retroactively. The surcharge we sanction is implemented to allow GTE to recover costs already expended that should have been lawfully recoverable in the PSC's first order.... The PSC has taken a position contrary to its current stance when a utility has overcharged its ratepayers.... If the customers can benefit in a refund situation, fairness dictates that a surcharge is proper in this situation. We cannot accept the contention that customers will now be subjected to unexpected charges. The Office of Public Counsel has represented the citizen ratepayers at every step of this procedure. We find that the surcharge for recovery of costs expended is not retroactive ratemaking any more so than an order directing a refund would be.
Id. at 973.
In this case, after its reconsideration, the PSC issued an order addressing the Clark opinion and expressing its final decision on remand. In that order, the order now on appeal, the PSC found the Clark case limited to its unique facts and determined that it did not mandate that a surcharge be authorized in this case. Specifically, in finding the Clark case inapplicable, the PSC indicated "one of the reasons no surcharge is appropriate is because SSU assumed the risk of a refund by requesting vacation of the automatic stay and by implementing the uniform rate structure." The PSC also indicated that, unlike the situation in Clark, the Public Counsel did not participate in this remand proceeding and thus the potential surcharge payers were not represented and lacked notice of any possibility of a surcharge. The PSC explained its decision as follows:
SSU is before us now seeking relief from its decision to prematurely implement uniform rates. The utility wishes to recover, via a surcharge on these unrepresented customers, millions of dollars in the cost of making the required refunds. We find that the lack of representation, coupled with the lack of notice and the assumption of risk in early implementation of the uniform rate structure violates our sense of fundamental fairness and equity. As such this situation does not comport with the equitable underpinnings of the holding in [Clark].

Because we find the PSC erred in relying on these reasons for finding Clark inapplicable, we reverse and remand its decision for reconsideration.
Following the principles set forth by the supreme court in Clark, we find that the PSC erroneously relied on the notion that SSU "assumed the risk" of providing refunds when it sought to have the automatic stay lifted and therefore should not be allowed to *559 impose surcharges. Just as GTE's failure to request a stay in Clark was not dispositive of the surcharge issue, neither is SSU's action in asking the PSC to lift the automatic stay. The stay itself was little more than a happenstance, in effect only because a governmental entity, Citrus County, appealed the original PSC order in this matter. See Fla.R.App.P. 9.310(b)(2); Fla.Admin.Code R. 25-22.061(3).
We are unable to discern any logic in the PSC's contention that SSU, having merely acted according to the terms of the order establishing uniform rates, assumed the risk of refunds, yet is precluded from recouping charges from customers who underpaid because of the erroneous order. As the supreme court explained in Clark, "equity applies to both utilities and ratepayers when an erroneous rate order is entered" and "[i]t would clearly be inequitable for either utilities or ratepayers to benefit, thereby receiving a windfall, from an erroneous PSC order." 668 So.2d at 973. Contrary to this principle, the PSC in this case has allowed those customers who underpaid for services they received under the uniform rates to benefit from its erroneous order adopting uniform rates. As a legal position, this will not hold water.
In Clark, the supreme court also explained that "[e]quity requires that both ratepayers and utilities be treated in a similar manner." 668 So.2d at 972. The PSC violated this directive by ordering SSU to provide refunds to customers who overpaid under the erroneous uniform rates without allowing SSU to surcharge customers who underpaid under those rates. As SSU asserts, rather than considering the interests of the utility as well as the two groups of customers, those who overpaid and those who underpaid, the PSC considered only the interests of the two groups of customers.
Finally, although the Public Counsel did participate in the initial proceedings, Public Counsel did not file a brief on the surcharge issue during the remand proceeding because it could not represent the interest of some customer groups over the interests of another customer group. Although several of these customer groups, including Keystone Heights, Marion Oaks Civic Association, and Burnt Store Marina, had retained counsel and filed petitions to intervene, the PSC denied those petitions as untimely pursuant to Rule 25-22.039, Florida Administrative Code.[3] We find that the PSC erred in denying these petitions as untimely in the circumstances of this case, where the issue of a potential surcharge and the applicability of the Clark case did not arise until the remand proceeding. Accordingly, on remand, we direct the PSC to reconsider its decision denying intervention by these groups and to consider any petitions for intervention that may be filed by other such groups subject to a potential surcharge in this case.
REVERSED and REMANDED, with directions.
BARFIELD, C.J., and DAVIS, J., concur.
NOTES
[1] At the time the PSC approved these rates, SSU owned and operated well over a hundred water and wastewater systems throughout Florida. Under the modified stand-alone rates, individual system revenue requirements are calculated as the starting point in generating rates. According to the PSC order, the rates are "developed based on a water benchmark of $52.00 at 10,000 gallons of consumption and a wastewater benchmark of $65.00 capped at 6,000 gallons of consumption, resulting in a combined bill, at 10,000 gallons of consumption, of $117.00."
[2] Keystone Heights and Marion Oaks Civic Association have appealed the PSC's denial of their petition to intervene, included in the order on appeal. Burnt Store Marina has also appealed the denial of its petition to intervene. We have consolidated the cases for briefing by treating these appeals as cross-appeals. We also note that Citizens of the State of Florida, through the Office of Public Counsel, as well as Sugarmill Woods Civic Association and Citrus County cross-appealed the PSC order. The Citizens of the State of Florida subsequently dismissed their cross-appeal, however. In addition, Sugarmill Woods and Citrus County have apparently abandoned their cross-appeal as their briefs address only the points raised in SSU's appeal.
[3] Rule 25-22.039 provides:

Persons, other than the original parties to a pending proceeding, who have a substantial interest in the proceeding, and who desire to become parties may petition the presiding officer for leave to intervene. Petitions for leave to intervene must be filed at least five (5) days before the final hearing, must conform with Commission Rule 25-22.036(7)(a), and must include allegations sufficient to demonstrate that the intervenor is entitled to participate in the proceeding as a matter of constitutional or statutory right or pursuant to Commission rule, or that the substantial interest of the intervenor are subject to determination or will be affected through the proceeding. Intervenors take the case as they find it.